# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| QPRIVACY USA LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>CISCO SYSTEMS, INC.,<br><br>      Defendant. | Civil Action No. 2:24-cv-00855-JRG<br><br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS
## PLAINTIFF QPRIVACY USA LLC'S COMPLAINT

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ........................................................................................................... 1

II.  FACTUAL BACKGROUND ........................................................................................ 1

III. LEGAL STANDARD .................................................................................................... 4

IV.  ARGUMENT ................................................................................................................. 4

    A.  QPrivacy Fails to Plausibly Plead Direct Infringement .......................................... 4

    B.  QPrivacy Fails to Plausibly Plead Its Indirect Infringement Claims ...................... 7

        1.  QPrivacy fails to adequately plead pre-suit knowledge for its indirect infringement claims. ................................................................. 8

        2.  QPrivacy fails to adequately plead post-suit induced infringement| .................................................................................................. 8

        3.  QPrivacy fails to adequately plead post-suit contributory infringement ............................................................................................ 10

    C.  QPrivacy Fails to Adequately Plead Willful Infringement ................................... 11

V.   CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

*Addiction & Detoxification Inst. LLC v. Carpenter*,
    620 F. App'x 934 (Fed. Cir. 2015) ................................................................................... 10

*Affinity Labs of Tex. LLC v. Toyota Motor N. Am. Inc.*,
    No. 6:13-cv-00365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ..................................... 9

*Anderson v. U.S. Dept. of Hous. and Urban Dev.*,
    554 F.3d 525, 528 (5th Cir. 2008) ........................................................................................ 4

*Antonious v. Spalding & Evenflo Cos.*,
    275 F.3d 1066 (Fed. Cir. 2002) .......................................................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................... 2, 4, 5, 6, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 2, 4, 5, 6

*Blue Spike, LLC v. Texas Instruments, Inc.*,
    No. 6:12-cv-00499, 2013 WL 12062263 (E.D. Tex. Sept. 27, 2013) .............................. 8, 11

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ........................................................................................... 5, 6

*Chapterhouse, LLC v. Shopify, Inc.*,
    No. 2:18-cv-00300-JRG, 2018 WL 6981828(E.D. Tex. Dec. 11, 2018).   .................. 6, 7, 11

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632 (2015) ............................................................................................................. 7

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
    No. 6:14-cv-00752-JRG-JDL, 2015 WL 4910427
    (E.D. Tex. Aug. 14, 2015) .................................................................................. 7, 9, 10, 11

*De La Vega v. Microsoft Corp.*,
    No. 6:19-cv-00612, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) ..................................... 6

*Dialect, LLC v. Bank of Am., N.A.*,
    No. 2:24-cv-00207, 2024 WL 4980794  (E.D. Tex. Dec. 4, 2024).   ................................. 10

*Diem LLC v. BigCommerce, Inc.*,
    No. 6:17-cv-00186-JRG-JDL, 2017 WL 9935521 (E.D. Tex. May 11, 2017) .................. 5, 6

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ............................................................................................................. 8

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  579 U.S. 93 (2016) ........................................................................................................ 12

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017) ....................................................................................... 4

*Monterey Research LLC v. Renesas Electronics Corp.*,
  No. 2:24-cv-00238-JRG, 2024 WL 4980795 (E.D. Tex. Dec. 4, 2024) ............................... 9

*Rackley v. JPMorgan Chase Bank*,
  No. 11-cv-00387, 2011 WL 2971357(W.D. Tex. Jul. 21, 2011) .......................................... 4

*Wapp Tech Ltd. P'ship v. Seattle SpinCo, Inc.*,
  No. 4:18-cv-00469, 2021 WL 1574714 (E.D. Tex. Apr. 22, 2021) ..................................... 12

*Xiros, Ltd. v. Depuy Synthes Sales, Inc.*,
  No. 21-cv-681, 2022 WL 3592449 (W.D. Tex. Aug. 22, 2022) .......................................... 11

**LOCAL RULE 7(a)(1) STATEMENT OF ISSUES TO BE DECIDED BY THE COURT**

1) Whether the Court should dismiss QPrivacy USA LLC's ("QPrivacy's") infringement claims against Cisco Systems, Inc. ("Cisco") because the Complaint fails to allege facts sufficient to infer that each claim limitation is met.

2) Whether the Court should dismiss QPrivacy's claims of indirect infringement against Cisco because the Complaint does not adequately plead the requirements of induced or contributory infringement under 35 U.S.C. §§ 271(b), (c).

3) Whether the Court should dismiss QPrivacy's willfulness claims because the Complaint does not allege pre-suit knowledge and only alleges garden variety willfulness.

**I.      INTRODUCTION**

Cisco requests that the Court dismiss QPrivacy's Complaint in its entirety.

QPrivacy fails to adequately plead its case for direct and indirect infringement. It attempts to accuse over 20 products of infringing two patents, but it does not allege how these products meet the limitations of even a single exemplary claim. Even for those select limitations that QPrivacy addresses, the allegations merely parrot claim language and include screenshots from Cisco's website that—without context or explanation—fail to show how the accused products satisfy the element. QPrivacy's allegations fail to state a plausible claim for relief.

QPrivacy is obligated to provide Cisco notice of how it allegedly infringes. Notice is particularly important in this case because the alleged infringing functionality—Cisco's Encrypted Traffic Analytics (ETA)—was disclosed in substantially the same form long before these asserted patents. The Court should not permit QPrivacy to proceed without first alleging facts sufficient to infer that the accused products practice each limitation of at least one exemplar claim in each patent. But even if QPrivacy can somehow craft a cogent infringement theory against Cisco's ETA functionality, doing so would simply admit that its patents are invalid as anticipated by ETA.

The indirect and willful infringement claims similarly fall short of the pleading requirements. The allegations do nothing more than recite generic legal standards and claim language. Nor does QPrivacy allege that Cisco had any pre-suit knowledge of the Asserted Patents. These bare allegations are precisely what *Twombly* and *Iqbal* preclude.

**II.     FACTUAL BACKGROUND**

On October 21, 2024, QPrivacy filed suit against Cisco, alleging infringement of U.S. Patent Nos. 11,106,824 and 11,816,249 (collectively, the "Asserted Patents"). (ECF No. 1 ("Compl.").)

QPrivacy's Complaint accuses over 20 products of infringement. (*Id*. ¶24.) QPrivacy does not address each of these products separately, alleging instead that these products and devices "implement Encrypted Traffic Analytics (ETA) technology," which QPrivacy alleges directly and indirectly infringes the Asserted Patents. (*Id*. ¶23.) Cisco's own patents disclosed the ETA functionality before the Asserted Patents.[1]

According to the Complaint, the Asserted Patents are directed to "management of private data during communication between a remote server and a user device." (Compl. ¶ 20.) The Complaint alleges that Cisco infringes at least claim 17 of the '824 patent and claim 1 of the '249 patent. (*Id*. ¶¶ 32, 49.) The Complaint does not address most limitations of these two claims:

| '824 Patent, Claim 17 | QPrivacy's Complaint |
|---|---|
| ***A system for dynamic management of private data during communication between a remote server and at least one user's device***, the system comprising: | "**The Accused Products** implement EncryptedTraffic Analytics (ETA) technology and contain ***a system for dynamic management of private data during communication between a remote server and at least one user's device***." (Compl. ¶ 34.) |
| a ***memory***; | "The Accused Products contain ***memory* . . .**" (Compl. ¶ 37.) |
| a communication data type database, comprising at least one communication data type corresponding to sharing of at least one data packet from the user's device; | None. |
| a privacy preference database, comprising a list of allowed types of data packets for sharing during communication with the at least one user's device; | None. |
| a communication module, to allow communication between the remote server and the at least one user's device; and | None. |

---

[1] Cisco's own patents on ETA functionality are prior art to the '824 and '249 patents. *See, e.g.*, U.S. Patent Nos. 10,305,928, 10,686,831, 10,362,373, 10,554,614, and 10,375,090 (disclosing accused traffic analytics functionality prior to QPrivacy's Asserted Patents). Cisco's published papers and presentations on ETA technologies also predate these patents by years. *See, e.g., Hiding in Plain Sight: Malware's Use of TLS and Encryption*, Cisco Blogs (Jan 25, 2016).

| | |
|---|---|
| a *processor*, coupled to a response database and to the privacy preference database, wherein the processor is configured to instruct the remote server to determine at least one data type for sharing of data packet that is compatible with the list of allowed patterns of data packets for sharing, and wherein the at least one data type is determined in accordance with characteristics of the communication data packet, and wherein the content of the at least one data packet is not read by the remote server for continued operation by the user's device *in real time* during communication between the remote server and the user's device. | The Accused Products contain . . . *processors*." (Compl. ¶ 37.) <br><br><br> "The Accused Products perform the encrypted traffic analysis and determination of response *in real time*." (Compl. ¶ 36.) |
| **'249 Patent, Claim 1** | **QPrivacy's Complaint** |
| *A method of dynamic management of encrypted data during communication between a remote server and a user's device*, the method comprising: | "*The Accused Products* implement Encrypted Traffic Analytics (ETA) technology and *implement a method of dynamic management of encrypted data during communication between a remote server and a user's device*." (Compl. ¶ 51.) |
| receiving, by the remote server, a communication comprising encrypted data packets; | None. |
| determining, by the remote server, a content of at least one data packet of the communication in accordance with characteristics of the at least one data packet, and wherein the content of the at least one data packet is not decrypted by the remote server, and the *determination* of the content is performed by the remote server *in real time* during a communication session between the remote server and the user's device; | "The Accused Products perform the encrypted traffic analysis and *determination* of response *in real time*." (Compl. ¶ 54.) |
| storing, by the remote server, a preference list; | None. |
| determining, by the remote server, based on a comparison of the determined content, whether to modify the at least one data packet, and if so, modifying the at least one data packet; and | None. |
| sharing, by the remote server, the modified communication. | None. |

QPrivacy also alleges induced and contributory infringement of the Asserted Patents as well as willful infringement. (Compl. ¶¶ 7, 39-40, 43, 56-57, 60). The Complaint does not

allege pre-suit knowledge of the patents. (Compl. ¶ 26.)

Cisco attempted to resolve these issues by requesting that QPrivacy file an amended complaint. QPrivacy declined to do so.

## III. LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is not met unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Additionally, a complaint must "place the alleged infringer on notice of what activity . . . is being accused of infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (internal citations and quotations marks omitted).

## IV. ARGUMENT

### A. QPrivacy Fails to Plausibly Plead Direct Infringement

QPrivacy does not assert a plausible claim for infringement. "Where a complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claim, the complaint fails to satisfy notice pleading requirements." *Rackley v. JPMorgan Chase Bank*, No. 11-cv-00387, 2011 WL 2971357, at *2 (W.D. Tex. Jul. 21, 2011) (*citing Anderson v. U.S. Dept. of Hous. and Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008)). Importantly, a plaintiff "cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). Formulaic recitations of elements of a

cause of action and "naked assertions devoid of 'further factual enhancement'" are insufficient. *Macrosolve, Inc. v. Cont'l Airlines, Inc.*, No. 6:11-cv-00687-LED-JDL, 2012 U.S. Dist. LEXIS 191041, at *9–10 (E.D. Tex. Jul. 30, 2012), report and recommendation adopted, 2012 WL 12305407 (citing *Iqbal*, 556 U.S. at 678). The pleading requirements demand a showing of "facts sufficient to create a plausible inference that *each element* of the claim is infringed by the accused products." *Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-00186-JRG-JDL, 2017 WL 9935521, at *2 (E.D. Tex. May 11, 2017) (citations omitted) (emphasis added). That showing is absent here.

The Complaint generically alleges that "[t]he Accused Products satisfy all claim limitations of one or more claims of the [Asserted Patents]." (Compl. ¶¶ 38, 55.) But as reflected in the chart above, the Complaint only identifies one representative claim for each patent and fails to allege facts sufficient to create a plausible inference that Cisco's products satisfy the limitations in either claim. For example, both patents require management of a user's private data using a user's privacy preferences, an element that is material to the claimed invention. *See, e.g.*, '824 patent cl. 17 (requiring a "preference database" and receiving of "privacy preference"); '249 patent cl. 1 (requiring a "preference list"). QPrivacy makes no attempt to map the claimed "privacy preference," "preference list," or "preference database" to any accused Cisco functionality, let alone provide factual support regarding how that functionality infringes.

QPrivacy's Complaint is silent on most other limitations too. The '824 patent requires a "communication data type database," "at least one communication data type," "a communication module," and a "response database." ('824 patent, cl. 17.) The '249 patent requires "determining . . . whether to modify the at least one data packet," "modifying the at least one

data packet," and "sharing . . . the modified communication." ('249 patent, cl. 1.) QPrivacy's failure to address the claims—much less provide facts sufficient to create a plausible inference that each element is infringed—renders its allegations insufficient and warrants dismissal.

As to the few limitations it does address, the Complaint is still deficient. *See Diem LLC*, 2017 WL 9935521, at *2 ("Plaintiff must put Defendant on plausible notice of the claims . . . by identifying a representative claim . . . and providing facts sufficient to create a plausible inference that each element of the claim is infringed."); *De La Vega v. Microsoft Corp.*, No. 6:19-cv-00612, 2020 WL 3528411, at *6 (W.D. Tex. Feb. 11, 2020) (dismissing direct infringement claims *with prejudice* where "Plaintiff only presented three screenshots of evidence without explaining how that evidence shows that [defendant] (and/or a third-party) performs the "coupling" step."). QPrivacy devotes only four paragraphs in its Complaint to discuss specific claim limitations of the Asserted Patents. These allegations are nothing more than superficial parroting of claim elements followed by unexplained screenshots from Cisco's website. *See, e.g.*, (Compl. ¶¶ 34, 51) (tracking language of preambles); (Compl. ¶¶ 36, 54) (tracking limitations that "determination of the content is performed by the remote server *in real time*"). Accordingly, Cisco is at a loss to understand the factual basis for QPrivacy's claims for infringement. Indeed, statements that "merely track the claim language" are "insufficient to satisfy the *Iqbal/Twombly* standard." *Bot M8*, 4 F.4th at 1355.

QPrivacy's allegations are even more deficient than what the Court encountered in *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-cv-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018). There, the plaintiff addressed the discrete elements of the patent claim in its complaint, including a screenshot of the defendant's website in support of each element. *Id*. Critically, however, the complaint did not explain how the "supporting" screenshots link to each

claim element they purportedly illustrate. *Id*. The court rejected plaintiff's argument that this constituted sufficient factual support, noting that "Plaintiff must further allege *how* the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations[.]" *Id*. (emphasis added).

So too here. QPrivacy's alleged "factual support" includes 15 unannotated screenshots from different Cisco webpages—none of which are elaborated upon. The screenshots themselves also fail to demonstrate how the claim requirements are met.

Given these numerous deficiencies and the failure to allege facts sufficient to create a plausible inference that even a single claim is infringed, the Court should dismiss QPrivacy's claims.

### B. QPrivacy Fails to Plausibly Plead Its Indirect Infringement Claims

For induced infringement, the complaint must: "1) adequately plead direct infringement . . .; 2) contain facts plausibly showing that defendant specifically intended for its customers to infringe . . .; and 3) contain facts plausibly showing that defendant knew that the customer's acts constituted infringement." *See Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-cv-00752-JRG-JDL, 2015 WL 4910427, at *3 (E.D. Tex. Aug. 14, 2015). Induced infringement "can only attach if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 640 (2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)).

For contributory infringement, the complaint must plausibly allege that: 1) there is an act of direct infringement; 2) components supplied by defendant are "material to practicing the invention"; 3) components supplied by defendant have "no substantial non-infringing uses"; and 4) defendant "knows [its] product[s] [are] especially made or adapted for an infringing use." *Blue Spike, LLC v. Texas Instruments, Inc.*, No. 6:12-cv-00499, 2013 WL 12062263, at *1 (E.D.

Tex. Sept. 27, 2013).

As a threshold matter, QPrivacy's indirect infringement claims should be dismissed because inducement and contributory infringement both require an adequately pled act of *direct* infringement, which QPrivacy has failed to do. Thus, QPrivacy's indirect claims should be dismissed on that basis alone. Separately and independently, however, QPrivacy's indirect infringement claims should be dismissed because it has not alleged sufficient facts to meet the basic requirements of inducement and contributory infringement as explained below.

### 1. QPrivacy fails to adequately plead pre-suit knowledge for its indirect infringement claims.

QPrivacy's pre-suit indirect infringement allegations fail as it does not allege that Cisco had pre-suit knowledge of the asserted patents. (Compl. ¶¶ 39, 43, 56, 60.) *See CyboEnergy, Inc. v. Hoymiles Power Elecs. USA, Inc.*, No. 2:23-cv-00311-JRG, 2024 WL 1219725, at *6–7 (E.D. Tex. Mar. 20, 2024) (dismissing pre-suit indirect infringement claim based on knowledge as of the filing of the complaint).

Recently, in *Monterey Research LLC v. Renesas Electronics Corp.*, the plaintiff "failed to plead facts plausibly showing that [the defendant] knew of the [asserted patent] before this lawsuit." No. 2:24-cv-00238-JRG, 2024 WL 4980795, at *7 (E.D. Tex. Dec. 4, 2024). Because induced infringement under Section 271(b) "requires knowledge of the existence of the patent that is infringed," the Court concluded that the plaintiff had failed to state a claim for pre-suit induced, pre-suit contributory, and pre-suit willful infringement. *Id.* at *4, 7.

The Court should likewise dismiss QPrivacy's pre-suit claims for indirect infringement.

### 2. QPrivacy fails to adequately plead post-suit induced infringement|

QPrivacy does not adequately plead the other elements of induced infringement either. First, QPrivacy does not allege facts showing that a third party directly infringes any

claim or that Cisco had knowledge of infringement. *Core Wireless*, 2015 WL 4910427, at *4 ("failing to allege any facts identifying, even at a basic level, which functionalities of the accused products are at issue, or how the instructions direct customers to use those products in an infringing manner, falls short of satisfying [the] notice requirements."). QPrivacy simply declares that these requirements are met and then concludes that "customers and end users . . . use the Accused Products in ways that directly infringe." *See* Compl. ¶¶ 39, 56. That level of pleading is insufficient to state a claim.

Second, QPrivacy ignores its burden to allege facts to "adequately support the *more demanding* specific intent requirement." *Affinity Labs of Tex. LLC v. Toyota Motor N. Am. Inc.*, No. 6:13-cv-00365, 2014 WL 2892285, at *6 (W.D. Tex. May 12, 2014). QPrivacy alleges in a single, conclusory sentence that Cisco possessed the required specific intent:

> "Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite their knowledge of the [Asserted Patent], thereby specifically intending for an inducing their customers to infringe the [Asserted Patent] through the customers' normal and customary use of the Accused Products."

(Compl. ¶¶ 39, 56.) "[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" is not enough. *Addiction & Detoxification Inst. LLC v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015). Neither is "merely alleging that Defendant provides instructions for using the accused product," as this Court recently explained. *Dialect, LLC v. Bank of Am., N.A.*, No. 2:24-cv-00207, 2024 WL 4980794, at *5 (E.D. Tex. Dec. 4, 2024).

Although QPrivacy mentions "user manuals and online instruction materials on Cisco's website" that allegedly instruct customers to use the accused product "in ways that directly infringe," QPrivacy fails to identify any examples of such materials. (Compl. ¶¶ 39, 56.) *See Core Wireless*, 2015 WL 4910427, at *3 ("generic allegations that an alleged infringer provides instructional materials along with the accused products . . . are insufficient to create a reasonable

inference of specific intent"); *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1074 (Fed. Cir. 2002) (allegations of infringement need to be based on "some actual evidence" uncovered during prefiling investigation). Thus, the Court should dismiss QPrivacy's claims for induced infringement.

### 3. QPrivacy fails to adequately plead post-suit contributory infringement

QPrivacy's contributory infringement claims fare no better as they merely recite the legal standard. QPrivacy offers a *single* paragraph for each patent alleging contributory infringement:

> Defendant has also infringed, and continues to infringe at least [representative claim] by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the [Asserted Patent], are especially made or adapted to infringe the [Asserted Patent], and are not staple articles or commodities of commerce suitable for non-infringing use. Defendant has been, and currently is, contributorily infringing the [Asserted Patent] in violation of 35 U.S.C. §§ 271(c) and (f).

(Compl. ¶¶ 40, 57.)

QPrivacy's Complaint "is devoid of any facts from which the Court can plausibly infer that any components of the products being sold have 'no substantial non-infringing uses.'" *Core Wireless*, 2015 WL 12850550, at *4. It also contains no facts supporting an inference that the accused products are "material to practicing the [claimed] invention," that Cisco knows the accused components are "especially made or adapted for an infringing use," or any other element of contributory infringement is met. *Blue Spike, LLC*, 2013 WL 12062263, at *1. The Court need not "accept as true [such] legal conclusion[s] couched as a factual allegation[s]" and should dismiss the claims. *Iqbal*, 556 U.S. at 678; *see also Chapterhouse,* LLC, 2018 WL 6981828, at *4 (dismissing claim where plaintiff concluded that defendant infringed "through the acts of contributory infringement" but failed to allege facts). Thus, the Court should dismiss QPrivacy's

claims for contributory infringement.

### C. QPrivacy Fails to Adequately Plead Willful Infringement

The Court should dismiss QPrivacy's conclusory, garden-variety willfulness claims. To properly plead willful infringement, QPrivacy must allege that Cisco "(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Xiros, Ltd. v. Depuy Synthes Sales, Inc.*, No. 6:21-cv-00681, 2022 WL 3592449, at *2 (W.D. Tex. Aug. 22, 2022).

QPrivacy has not alleged sufficient facts to meet that standard. Instead, its willful infringement claims rest on a single sentence:

> Defendant also has knowledge of the [Asserted Patent] at least due to the filing of this Complaint, and based on that knowledge, Defendant willfully infringes the [Asserted Patent].

(Compl. ¶¶ 43, 60.) That is nothing more than the type of "garden-variety" claim ill-suited for a willfulness determination. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–104, 109 (2016); *Wapp Tech Ltd. P'ship v. Seattle SpinCo, Inc.*, No. 4:18-cv-00469, 2021 WL 1574714, at *1 (E.D. Tex. Apr. 22, 2021) ("Enhanced damages are generally appropriate under § 284 only in 'egregious cases' of misconduct beyond typical infringement and should not be awarded in 'garden-variety cases.') (citations omitted).

Thus, the Court should dismiss QPrivacy's claims for willful infringement.

### V. CONCLUSION

QPrivacy does not sufficiently plead its case for direct infringement. It fails to allege facts that any claim—let alone each claim element—is infringed. QPrivacy's indirect and willful infringement claims, which are mere recitations of the legal standards for those claims without any facts in support, are likewise deficient. The Court should dismiss all claims against Cisco.

Dated: December 30, 2024                                  MORRISON & FOERSTER

By: */s/ Melissa R. Smith*
    Bita Rahebi
    **MORRISON & FOERSTER LLP**
    707 Wilshire Boulevard
    Los Angeles, CA 90017-3543
    Telephone: (213) 892-5200
    Facsimile: (213) 892-5454
    Email: brahebi@mofo.com

    Melissa R. Smith
    State Bar No. 24001351
    **GILLAM & SMITH, LLP**
    303 South Washington Avenue
    Marshall, Texas 75670
    Telephone: (903) 934-8450
    Facsimile: (903) 934-9257
    Email: melissa@gillamsmithlaw.com

    *Attorneys for Defendant*
    *Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 30th day of December, 2024.

    */s/ Melissa R. Smith*
    Melissa R. Smith