# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| QPRIVACY USA LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>CISCO SYSTEMS, INC.,<br><br>        Defendant. | Civil Action No. 2:24-cv-00855-JRG<br><br><br>**JURY TRIAL DEMANDED** |

**<u>DEFENDANT CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF QPRIVACY USA LLC'S COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 1

    A. QPrivacy's Opposition Demonstrates That It Has No Basis to Proceed with Its Direct Infringement Claims ............................................................ 1

        1. QPrivacy Cannot Overcome Its Deficiencies. .......................................... 1

        2. QPrivacy's Remaining Arguments Fail. ................................................... 4

    B. QPrivacy's Opposition Demonstrates That It Has No Basis to Proceed with Its Indirect Infringement Claims ........................................................ 6

        1. QPrivacy's Induced Infringement Claims Remain Inadequate. ................................................................................................. 6

        2. QPrivacy's Contributory Infringement Claims Remain Inadequate. ................................................................................................. 8

    C. QPrivacy's Opposition Demonstrates That It Has No Basis to Proceed with Its Willful Infringement Claims ....................................................... 9

III. CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Coding Techs. LLC v. Google LLC,*
   No. 2:24-CV-00353-JRG, 2024 WL 5110058 (E.D. Tex. Dec. 13, 2024) ................................9

*Alvao Digital, LLC v. C3 Presents, L.L.C.,*
   No. 6:21-CV-01208-ADA, 2022 WL 22869793 (W.D. Tex. Sept. 26, 2022) .........................3

*Antonious v. Spalding & Evenflo Cos.,*
   275 F.3d 1066 (Fed. Cir. 2002) ................................................................................................8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...............................................................................................................10

*Bell Atl. Corp v. Twombly,*
   550 U.S. 544, (2007) ................................................................................................................3

*Blue Spike, LLC v. Texas Instruments, Inc.,*
   No. 6:12-CV-00499, 2013 WL 12062263 (E.D. Tex. Sept. 27, 2013) .....................................8

*Bot M8 LLC v. Sony Corp. of Am.,*
   4 F.4th 1342 (Fed. Cir. 2021) ..........................................................................................2, 5, 6

*Chapterhouse, LLC v. Shopify, Inc.,*
   No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) ...............................9

*Comcast Cable Commc'ns, LLC v. OpenTV, Inc.,*
   319 F.R.D. 269 (N.D. Cal. 2017) .............................................................................................4

*Core Wireless Licensing S.A.R.L. v. Apple Inc.,*
   No. 6:14-CV-00752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ...............6, 7, 8

*Fractus, S.A. v. TCL Corp.,*
   No. 2:20-CV-00097-JRG, 2021 WL 2483155 (E.D. Tex. June 2, 2021) .................................4

*Icon Health & Fitness, Inc. v. Strava, Inc.,*
   849 F.3d 1034 (Fed. Cir. 2017) ................................................................................................8

*Morgan v. Hubert,*
   335 F. App'x 466 (5th Cir. 2009) .............................................................................................3

*Resonant Systems, Inc. v. Sony Group Corp.,*
   No. 2:22-CV-00424-JRG, 2023 WL 5723646 (E.D. Tex. Sept. 5, 2023) ................................7

*Right Question, LLC v. Samsung Elecs. Co.*,
  No. 2:21-CV-00238-JRG, 2022 WL 507487 (E.D. Tex. Feb. 18, 2022) ...................................7

*Toshiba Corp. v. Imation Corp.*,
  681 F.3d 1358 (Fed. Cir. 2012)................................................................................................9

*Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*,
  412 F.3d 1319 (Fed. Cir. 2005)................................................................................................5

*Vanmoor v. Wal-Mart Stores, Inc.*,
  201 F.3d 1363 (Fed. Cir. 2000)................................................................................................5

*Vervain, LLC v. Micron Tech., Inc.*,
  No. 21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ......................................2

*Vita–Mix Corp. v. Basic Holding, Inc.*,
  581 F.3d 1317 (Fed. Cir. 2009)................................................................................................9

**I.      INTRODUCTION**

QPrivacy does not dispute that the asserted patents' purported invention relates to the management of data based on a user's privacy preferences, and that QPrivacy's Complaint does not address the claim limitations material to that management.  The Complaint cannot pass the *Iqbal/Twombly* pleading standard with that failing.

Rather than grappling with these stark omissions, QPrivacy accuses Cisco of applying a heightened pleading standard.  Although an element-by-element analysis is not required, the pleading standard does require sufficient detail to understand how material limitations are met.  The few limitations that QPrivacy does address are not enough because the Complaint merely parrots portions of the claim language followed by unexplained screenshots.  As to the omitted claim limitations, QPrivacy admits that it cannot advance any infringement theory with the many public technical materials at its disposal.  QPrivacy's plea to fill its gaps through discovery—despite no plausible infringement theory at this stage—highlights exactly why the case should stop at this point.

As to indirect and willful infringement, QPrivacy confirms that its claims are limited to post-suit conduct.  But even as to post-suit allegations, QPrivacy fails to point to any facts in the Complaint to support its attenuated infringement theories.  Rather than address relevant case law, QPrivacy relies on generic recitations of legal standards and claim language to piece together indisputably bare allegations.  The Court should dismiss QPrivacy's Complaint.

**II.     ARGUMENT**

    **A.     QPrivacy's Opposition Demonstrates That It Has No Basis to Proceed with Its Direct Infringement Claims**

        **1.     QPrivacy Cannot Overcome Its Deficiencies.**

As Cisco explained in its Motion, QPrivacy's Complaint either (a) entirely ignored claim

limitations or, (b) at most, parroted claim language for a few limitations. (Mot. at 5-6.) QPrivacy does little to address these issues in its Opposition.

**Missing Limitations**: Cisco identified more than ten examples of specific limitations from QPrivacy's two representative claims that the Complaint fails to address. (Mot. at 5-6.) QPrivacy's Opposition does not and cannot cure those failures. (Opp. at 6.)

Cisco does not, as QPrivacy contends, demand that every limitation be addressed. (Opp. at 5-6.) Although an element-by-element pleading is not required, *Iqbal/Twombly* still requires sufficient factual allegations to show a plausible claim for relief, and "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claims, and the nature of the allegedly infringing device." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021); *see also Vervain, LLC v. Micron Tech., Inc.*, No. 21-CV-00487-ADA, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022) (demanding "higher level of detail" for "clearly material" elements) (citations omitted).

Here, the patents are directed to the management of private data based on a user's privacy preferences. (*See, e.g.*, Compl. ¶¶ 20-22; Mot. at 5.) Claim limitations requiring a "preference database," a "privacy preference" or "preference list," and "modifying . . . data packet[s]" based on those preferences are material to practicing the asserted claims, yet QPrivacy's Complaint fails to map those limitations to any accused functionality. (Mot at 5-6.) Thus, the Complaint's failure to address more than ten elements—including elements *material* to the purported invention—does not pass the pleading standard.

The Complaint's failure cannot be excused, as QPrivacy argues, because claim elements purportedly involve "non-public information and thus can only be borne out in discovery."

2

(Opp. at 6.) The Complaint itself makes no such allegation, nor does it allege any basis for inferring that discovery will fill these missing limitations, and the law requires plaintiffs to allege a reasonable basis before a lawsuit may proceed. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 558 (2007) ("[A] district court must . . . insist upon some specificity in the pleading . . . before allowing a potentially massive factual controversy to proceed."). Despite ample public information on the accused functionality, QPrivacy has not met the standard of showing "enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009); *see also Alvao Digital, LLC v. C3 Presents, L.L.C.*, No. 6:21-CV-01208-ADA, 2022 WL 22869793, at *3 (W.D. Tex. Sept. 26, 2022) ("Because [plaintiff] has not met its burden in sufficiently pleading a claim upon which relief can be granted, it is not entitled to discovery when such discovery would only serve to allow [plaintiff] the opportunity to 'shore up the merits' of its claim.").

**Parroting of Claim Limitations:** The limitations that QPrivacy's Opposition and Complaint do address—*i.e.,* those requiring that data packet content "is not read by the remote server . . . in real time"—are of no help. (*See* Opp. at 3-4 (citing Compl. ¶¶ 34-37)). As Cisco explained, although the Complaint includes screenshots and parrots the language for these limitations, it fails to allege how these excerpts map to the various elements of those limitations. (Mot. at 6.) QPrivacy plucks certain terms from these limitations but ignores that these limitations require more. For instance, the limitation requires that the data packet content "is not read *by the remote server for continued operation by the user's device* in real time *during communication between the remote server and the user's device*." QPrivacy contends the Complaint's excerpts show that underlying data "is not read" and that ETA is performed "in real time," but it ignores that the Complaint fails to identify what constitutes the claimed "*user*

3

*device*" or a "*remote server.*"  That failure is important at least because the claimed "remote server" must also "determine at least one data type for sharing of data packet that is compatible with the list of allowed patterns of data packets for sharing."  *See, e.g.*, '824 Patent, claim 17; *see also* '249 patent, claim 1 (requiring that the remote server "determin[e], . . . based on a comparison of the determined content, whether to modify the at least one data packet, and if so, modifying the at least one data packet.").

### 2.  QPrivacy's Remaining Arguments Fail.

QPrivacy spends several pages quoting allegations that it contends show a well-pled claim, Opp. at 3-5, but most of what it quotes is unrelated to the claim language. For instance, QPrivacy contends the accused products "***monitor*** and ***store*** telemetry data in order to ***analyze*** and ***compare*** network traffic."  (Opp. at 4 (emphasis in original)).  Yet the claims make no refence to any such functionality.  According to QPrivacy, "[t]his kind of 'comprehensive' data gathering . . . creates at least a plausible inference that the Accused Products infringe QPrivacy's claims."  (Opp. at 5.)  How that creates a "plausible inference," however, QPrivacy does not say.

Despite pages to spare, QPrivacy provides no additional detail.  It instead invites the Court to comb through its Complaint to find support: "The remainder of the Complaint contains similar examples—excerpting specific language from Cisco's documents and describing how they are applicable to QPrivacy's claims."  (Opp. at 5.)  Cisco disagrees.  The Complaint does not describe how any of the screenshots it cites "are applicable to [its] claims."[1]

---

[1] QPrivacy cannot sidestep the pleading requirements by serving its infringement contentions. *Fractus, S.A. v. TCL Corp.*, No. 2:20-CV-00097-JRG, 2021 WL 2483155, at *3 (E.D. Tex. June 2, 2021) ("[P]leadings and infringement contentions serve different purposes."); *Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, 319 F.R.D. 269, 275 (N.D. Cal. 2017) (noting Patent Local Rules' disclosure requirement for infringement contentions "do not speak to pleading requirements, and in any case cannot supersede the Federal Rules of Civil Procedure").  In any case, QPrivacy's contentions merely offer more of the same.  The contentions recycle the same handful of unexplained screenshots and parrot claim language without meaningful analysis.

QPrivacy's reliance on *Bot M8* is misplaced. Although two patents survived the pleading standard in that case, material to both was a limitation that required completing a fault inspection program before a game is started, and plaintiff had sufficiently alleged facts about error codes to support inferring that limitation was met. *Bot M8*, 4 F.4th at 1355. For two other patents, however, the court affirmed ***dismissing*** plaintiff's claims with prejudice because, despite fourteen pages of allegations (and fifteen pages of claim charts) referencing different storage components, plaintiff failed to identify a storage component in which the claimed programs were stored together. *Id*. at 1353.

Here, in contrast, QPrivacy does not allege any facts to support inferring that material limitations related to the management of private data—the purported invention of these patents—is met by the accused devices. Moreover, the few functional allegations the Complaint does make fail to identify specific components that perform those functions. Thus, QPrivacy's allegations are unlike those that survived the pleading standard in *Bot M8* and much more like those that did not.

Cisco is not asking this Court to grant its motion based on invalidity, as QPrivacy argues. (Opp. at 6-7.) Rather, Cisco referenced validity to underscore that notice requirements are "particularly important in this case." (Mot. at 1.) By accusing functionality that pre-dates its patents, QPrivacy has opened itself up to the fact that the asserted patents are anticipated by that same functionality. *Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) ("A century-old axiom of patent law holds that a product which would literally infringe if later in time anticipates if earlier."); *see also Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000) (affirming invalidity based on the patentee's own infringement allegations because accused product was placed on-sale before critical date of the invention).

5

This litigation should not be a guessing game. If QPrivacy believed Cisco infringes the asserted patents, then it should have pled facts to state a plausible claim for relief.

B.   **QPrivacy's Opposition Demonstrates That It Has No Basis to Proceed with Its Indirect Infringement Claims**

QPrivacy represents that it has no claims for pre-suit indirect infringement. (Opp. at 7.) As for post-suit indirect infringement, QPrivacy's arguments regarding its direct infringement allegations confirm that its claims—which require an act of direct infringement—should be dismissed. The Court also should dismiss the claims for the reasons below.

1.   **QPrivacy's Induced Infringement Claims Remain Inadequate.**

QPrivacy claims that Cisco demands more than what is required at the pleading stage. (Opp. at 8.) Not so. QPrivacy points to the same standard—even citing the same elements—that Cisco did in its Opening Brief. (*See* Opp. at 8; Mot. at 7 (citing *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-00752-JRG-JDL, 2015 WL 4910427, at *3 (E.D. Tex. Aug. 14, 2015)).) QPrivacy does not meet that standard.

With nothing else to identify, QPrivacy refers to the same screenshots purportedly supporting its direct infringement theory as now also "educating customers on infringing features." (Opp. at 9.) But the Complaint makes no such allegation and does not cite those screenshots in the context of induced infringement. (*See* Compl. ¶¶39, 56.) Indeed, it cites no specific support at all. In either event, if unannotated, unexplained screenshots and mere conclusory statements were sufficient to state a claim, the pleading standards as set forth by *Iqbal* and *Twombly* would be obliterated. *See Bot M8*, 4 F.4th at 1353 (holding that a plaintiff "cannot assert a plausible claim for infringement . . . by reciting the claim elements and merely concluding that the accused product has those elements").

QPrivacy's own cited cases confirm that its induced infringement claims are not

adequately pleaded. In those cases, the plaintiffs provided substantially more information regarding its infringement theories than QPrivacy does here.

In *Resonant Systems, Inc. v. Sony Group Corp.*, for example, this Court found a sufficient factual basis for induced infringement where plaintiffs provided specific examples of aspects of the accused products that met each claim limitation. No. 2:22-CV-00424-JRG, 2023 WL 5723646, at *3 (E.D. Tex. Sept. 5, 2023); *see, e.g.*, *id.*, ECF No. 1-4, at 20 (specifically providing that the accused product comprises the claimed "user-input features" by including features such as "buttons, joysticks, adaptive triggers, and a trackpad for providing user input"). Here, by contrast, QPrivacy's infringement allegations (1) merely parrot limited claim language, (2) contain unannotated screenshots, and (3) fail to describe how any of the screenshots it cites are applicable to the claims.

QPrivacy's excerpt from *Right Question, LLC v Samsung Elecs. Co.* does not support its case either. No. 2:21-CV-00238-JRG, 2022 WL 507487, at *3 (E.D. Tex. Feb. 18, 2022). The next sentence of the Court's opinion, which QPrivacy excludes from its Opposition, clarifies that the plaintiff "point[ed] to literature 'advertising an infringing use' and 'instructing how to engage in an infringing use' and include[ed] corresponding claim recitations which indicate how such use of the Accused Products allegedly infringes." *Id.* at *3. To say that QPrivacy "unquestionably surpasses this threshold" because its Complaint "clearly identifies" the accused functionality is quite the overstatement. (Opp. at 10.)

As QPrivacy itself describes, the Complaint merely "references instructions provided to customers." (Opp. at 10.) Broadly referencing some undisclosed set of instructions is precisely the type of "generic allegations" that this Court found insufficient in *Core Wireless*. No. 6:14-CV-00752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015) (holding that generic

allegations that an alleged infringer provides "instructional materials" are insufficient to create a "reasonable inference of specific intent"). Even if the Complaint "excerpt[ed] specific language from Cisco documents explaining how ETA works" (which it does not), Opp. at 10, that still does not explain "how the instructions direct customers to use those products in an infringing manner" as required by this Court's precedent. *Core Wireless*, 2015 WL 4910427, at *4. Thus, QPrivacy's disclosure falls short of the requisite pleading standard for induced infringement.

### 2. QPrivacy's Contributory Infringement Claims Remain Inadequate.

QPrivacy's Opposition does nothing to salvage its contributory infringement claims. QPrivacy does not address its failure to allege facts supporting an inference that the accused products are "material to practicing the [claimed] invention" or that Cisco knows the accused components are "especially made or adapted for an infringing use." *Blue Spike, LLC v. Texas Instruments, Inc.*, No. 6:12-CV-00499, 2013 WL 12062263, at *1 (E.D. Tex. Sept. 27, 2013). Instead, QPrivacy rests on conclusory statements that its allegations are "adequate." (Opp. at 11.) That approach fails for several reasons.

First, attorney argument without factual support is not sufficient to state a claim. *See Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1074 (Fed. Cir. 2002) (allegations of infringement must be based on "some actual evidence"); *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017) ("Attorney argument is not evidence.").

Second, to state a contributory infringement claim, it is not enough to simply "identif[y] the Accused Products and the accused components" and generically "explain[] how the functionalities of the Accused Products correlate to the Asserted Patents," as QPrivacy seems to think. Opp. at 11; *see Blue Spike* 2013 WL 12062263, at *1 (listing elements for contributory infringement). QPrivacy's deficient direct infringement allegations similarly fail to explain why the components supplied by Cisco allegedly have no substantial non-infringing uses. Opp. at 11;

8

*See Vita–Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009) ("[N]on-infringing uses are substantial when they are not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental."); *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362 (Fed. Cir. 2012) (listing "the use's frequency, the use's practicality, the invention's intended purpose, and the intended market" as factors to consider in determining whether a use is substantial).

Third, QPrivacy has no authority from which to insist its contributory infringement allegations are adequate. QPrivacy relies on *Advanced Coding Techs. LLC v. Google LLC*, where plaintiff provided "considerable detail" of infringement, including "specific identification of the Accused Products and the accused components" and a "specific explanation of how the functionalities of the Accused Products correlate to the Asserted Patents." No. 2:24-CV-00353-JRG, 2024 WL 5110058, at *3 (E.D. Tex. Dec. 13, 2024); Opp. at 10. Here, no such specificity is provided, and no reasonable inference can be drawn that the non-infringing uses requirement is met. Critically, QPrivacy does nothing to differentiate Cisco's cited authority. *See Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *4 (E.D. Tex. Dec. 11, 2018) (dismissing claim where plaintiff concluded that defendant infringed "through the acts of contributory infringement" without providing any factual support).

### C.     QPrivacy's Opposition Demonstrates That It Has No Basis to Proceed with Its Willful Infringement Claims

QPrivacy's argument that Cisco "admits that QPrivacy's Complaint properly alleges willful infringement" is plain wrong. (Opp. at 12.) QPrivacy reasons that because Cisco quoted QPrivacy's single conclusory allegation on willfulness, Cisco concedes the elements of willfulness have been met. *Id*. But quoting from QPrivacy's Complaint (particularly to emphasize its brevity and lack of factual support) is not akin to conceding the substance of the

9

quotation. Indeed, rather than cite any facts (or identify anywhere in the Complaint) in support of its willful infringement claim, QPrivacy simply states that its one-sentence allegation "fulfills the knowledge and timing aspects" of a willful infringement claim, and the "remainder of the Complaint" satisfies the rest. (Opp. at 12.) This is a textbook example of the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [that does] not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Cisco is in no way misapplying *Halo*—it is requiring QPrivacy to meet the minimum standings required for pleading willful infringement. As discussed above, QPrivacy has yet to adequately plead *any* form of underlying infringing conduct, egregious or not.

      Thus, the Court should dismiss QPrivacy's claims for willful infringement.

*    *    *

      QPrivacy requests that the Court grant it leave to amend should the Court determine its allegations are deficient. (Opp. at 13.) Cisco asked QPrivacy to voluntarily do so prior to bringing its Motion, but QPrivacy declined. As reflected in QPrivacy's Opposition, it has no theory on material aspects of the claims it identifies in its Complaint. Attaching infringement contentions that suffer from the same deficiencies will be of no help. As such, the Court should dismiss with prejudice the entirety of the Complaint.

### III.  CONCLUSION

      Neither the conclusory allegations in its Complaint nor those in its Opposition can save QPrivacy's claims. QPrivacy ignores most claim requirements and still identifies no plausible facts beyond screenshots and parroted language from the claims and legal standards. Cisco asks that the Court dismiss all claims against it.

Dated:   January 21, 2025

MORRISON & FOERSTER

By: */s/ Bita Rahebi*
    Bita Rahebi
    **MORRISON & FOERSTER LLP**
    707 Wilshire Boulevard
    Los Angeles, CA 90017-3543
    Telephone: (213) 892-5200
    Facsimile: (213) 892-5454
    Email: brahebi@mofo.com

    Melissa R. Smith
    State Bar No. 24001351
    **GILLAM & SMITH, LLP**
    303 South Washington Avenue
    Marshall, Texas 75670
    Telephone:  (903) 934-8450
    Facsimile:  (903) 934-9257
    Email:  melissa@gillamsmithlaw.com

    *Attorneys for Defendant*
    *Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 21st day of January, 2025.

    */s/  Melissa R. Smith*
    Melissa R. Smith