# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| QPRIVACY USA LLC,<br><br>    Plaintiff,<br><br>v.<br><br><br>CISCO SYSTEMS, INC.,<br><br>    Defendant. | Civil Action No. 2:24-CV-00855-JRG<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANT'S
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................ 1
II.   ARGUMENT ...................................................................................................................... 2
    A.    QPrivacy's Complaint States a Claim for Direct Infringement. ......................................... 2
    i.    QPrivacy's Complaint Does Not Omit Any "Required" Claim Elements. ........................ 3
    ii.   Cisco Has Fair Notice of the Claims Asserted Against It. .................................................. 4
    B.    QPrivacy's Complaint Properly Alleges Induced Infringement. ........................................ 5
    C.    QPrivacy's Complaint Properly Alleges Contributory Infringement. ................................ 7
    D.    QPrivacy's Complaint Properly Alleged Post-Suit Willful Infringement. ......................... 9
III.  CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Advanced Coding Techs. LLC v. Google LLC*, 2024 U.S. Dist. LEXIS 225916 (E.D. Tex. Dec. 12, 2024) ................................................................................................................................ 8

*Barry v. Medtronic, Inc.*, 914 F.3d 1310 (Fed. Cir. 2019) ............................................................. 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 1, 2, 7

*Blue Spike, LLC v. Texas Instruments, Inc.*, 2013 U.S. Dist. LEXIS 191697 (E.D. Tex. Sept. 27, 2013) ........................................................................................................................................ 8

*Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021) ........................................... 3, 4

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 U.S. Dist. LEXIS 106962 (E.D. Tex. Aug. 14, 2015) ................................................................................ 7

*Digitaldoors, Inc. v. Comerica Bank*, No. 2:23-cv-00541-JRG-RSP, 2024 U.S. Dist. LEXIS 177294 (E.D. Tex. Sep. 9, 2024) ........................................................................................... 4, 5

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ..................................................................... 1

*Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354 (Fed. Cir. 2006) .......................... 6

*In re Bill of Lading*, 681 F.3d 1323 (Fed. Cir. 2012) ................................................................ 6, 7

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277 (Fed. Cir. 2013) ................ 4

*Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) ........................................................ 2

*Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986) .................................... 6

*Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819 (E.D. Tex. 2019, J. Gilstrap) ....... 1, 3, 7

*O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299 (5th Cir. 2019) ........................................................ 2

*Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190 (Fed. Cir. 2017) .................................. 6

*Touchstream Techs., Inc. v. Altice USA, Inc.*, 2024 U.S. Dist. LEXIS 45186 (E.D. Tex. Mar. 14, 2024) ........................................................................................................................................ 9

*Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018) ............. 6

*Vervain, LLC v. Micron Tech., Inc.*, 2022 U.S. Dist. LEXIS 54 (W.D. Tex. Jan. 3, 2022) ........... 4

**Statutes**

35 U.S.C. § 271(b) ......................................................................................................................... 5

**Rules**

Fed. R. Civ. P. 8(a)(2) .................................................................................................................... 2

**Treatises**

Robert A. Matthews, Jr. 2 *Matthews Annotated Patent Digest* § 10:62 (2019) ............................ 6

I.      INTRODUCTION

Defendant's Motion and Reply fail for two reasons. First, Defendant ignores that in evaluating a motion to dismiss under Rule 12(b)(6) in this circuit, the court must accept all factual allegations in the complaint as true, view the facts in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Defendant Cisco either ignores statements of fact in the Complaint, interprets them in a contrary manner, or draws different inferences to Cisco's benefit. However, when viewed in the light most favorable to QPrivacy, the Complaint states claims for which relief can be granted.

Second, Defendant has fair notice and is aware of the claims against it—the point of filing a complaint. As is clear from the briefing, Defendant Cisco understands which of its products are accused of infringement, the accused technology performed by those products, and the patents and claims that are asserted as being infringed by those products and that technology. In its Reply, Cisco reverses course from its Motion and acknowledges that "an element-by-element pleading is not required" but continues to argue that QPrivacy "fails to map" certain limitations "despite ample public information." *See* Reply at 2-3. Plaintiff's case is not limited to Cisco's public information. The discovery process will reveal relevant evidence. *Twombly*'s plausibility standard is met when the complaint pleads "enough fact to raise a reasonable expectation that discovery will reveal evidence" in support of the alleged claims. *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 827 (E.D. Tex. 2019, J. Gilstrap) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *accord id.* at 559 (explaining that claims should only be dismissed at the pleading stage when there is "no 'reasonably founded hope that the [discovery] process will reveal relevant evidence'" (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005))).

For the reasons described in QPrivacy's Opposition and herein, Cisco's Motion is <u>not</u> an exception to the practice in the Fifth Circuit that "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009)(internal citations omitted). Cisco's Motion should be denied.

## II.     ARGUMENT

### A.  QPrivacy's Complaint States a Claim for Direct Infringement.

The basic rule is that QPrivacy's Complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Complaint describes the QPrivacy patents (the '824 and '249 Patents) that Cisco infringes, the products and technology accused ("certain server and network devices […] that implement Encrypted Traffic Analytics (ETA) technology"), and supports those allegations with excerpts from Cisco's own public documents describing infringing features of the Accused Products that correspond to the Asserted Claims. *See* Opp. at 3-5; *e.g.*, Complaint ¶¶ 21-24, 32-37.

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must "accept all well-pleaded facts in the complaint as true and view the facts in the light most favorable to the plaintiff." *O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 304 (5th Cir. 2019). A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand*, at 232 (5th Cir. 2009). As such, courts "are not authorized or required to determine whether the plaintiff's plausible inference . . . is equally or more plausible than other competing inferences . . . ." *Id.* (citing *Twombly*, 550 U.S. at 556). Given these principles, QPrivacy states a plausible claim for direct infringement.

### i. QPrivacy's Complaint Does Not Omit Any "Required" Claim Elements.

In its Reply, Cisco continues to argue that the Complaint should be dismissed because there are "specific limitations […] that the Complaint fails to address" even though "an element-by-element pleading is not required." *See* Reply at 2. The Federal Circuit confirmed that "a plaintiff is not required to plead infringement on an element-by-element basis" and "the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). Cisco goes on to cite software component limitations such as a "preference database," "preference list," and "modifying … data packet[s]" as "*missing.*" *Id.* Cisco then unilaterally determines that these limitations are *material* and therefore required to be explicitly identified. *Id.* There is no such requirement.

Cisco relies on *Bot M8* regarding "materiality" of claim limitations, but "the materiality of any given element to practicing the asserted claim" is only one of a "number of factors" used by a court to determine the level of detail required in a given case. *Id.* (citing *Bot M8*, at 1353). Instead, a court should "draw on its judicial experience and common sense" to determining whether a complaint states a plausible claim for relief. *Bot M8* at 1342. As this court has stated regarding software component limitations, such as those referenced by Cisco, "to identify precisely which source code component performs precisely the infringing function is something that discovery will reveal, but it is unrealistic to require such at the pleading stage." *Motiva Patents,* 408 F. Supp. 3d at 827 (E.D. Tex. 2019, J. Gilstrap). "Common sense illustrates why the information disparity between parties is relevant in deciding what level of detail should be required." *Id.* at 832. "'Common sense' confirms that [Plaintiff] cannot be required to identify, pre-discovery, what specific source code performs the pertinent accused functionality." *Id*. at 827.

3

Further, the court in *Bot M8* did not provide guidance for what constitutes materiality. *See, generally, Bot M8*, 4 F.4th 1342 (Fed. Cir. 2021). The Western District court in *Vervain* (cited by Cisco) interpreted *Bot M8* to mean that the "higher level of detail in pleading infringement may—depending on the complexity of the technology—be demanded for elements clearly 'material' to novelty and non-obviousness." *Vervain, LLC v. Micron Tech., Inc.*, 2022 U.S. Dist. LEXIS 54, *14 (W.D. Tex. Jan. 3, 2022). The court then found that the limitations at issue were material "because the relevant prosecution history and the Complaint suggest that these limitations capture the point of novelty." *Id.* Cisco did not—and could not—make any such arguments based on the prosecution histories of QPrivacy's asserted patents, instead offering only unsupported allegations of materiality. Viewing the facts in the light most favorable to QPrivacy and drawing all reasonable inferences in QPrivacy's favor, QPrivacy's Complaint did not omit any mandatory claim elements for direct infringement and makes a plausible claim for relief.

### ii. Cisco Has Fair Notice of the Claims Asserted Against It.

To survive a Rule 12(b)(6) motion in the context of a patent infringement claim, a plaintiff must allege facts sufficient to place "a potential infringer ... on notice of what activity or device is being accused of infringement." *Digitaldoors, Inc. v. Comerica Bank*, No. 2:23-cv-00541-JRG-RSP, 2024 U.S. Dist. LEXIS 177294, at *5 (E.D. Tex. Sep. 9, 2024) (citing *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)). Defendant Cisco's Motion shows that Cisco is aware of what activity and which devices are being accused of infringement. *See* Mot. at 2 ("QPrivacy's Complaint accuses over 20 products of infringement"; "these products and devices 'implement Encrypted Traffic Analytics (ETA) technology,' which QPrivacy alleges directly and indirectly infringes the Asserted Patents.") Cisco further expands on its understanding of the accused ETA technology by discussing its own

4

patents on ETA as a potential invalidity defense in its Motion and Reply. *See* Mot. at 2; Reply at 5.

While being on notice of exemplary claims asserted against it, Cisco's Reply insists that the paragraphs in QPrivacy's Complaint describing its excerpted evidence improperly "parrot" the text of the Asserted Claims. *See* Reply at 1-4, 7, 10. However, the paragraphs describing the cited evidence are the bridge connecting the language in the claims to the language used by Cisco in their public documents. *See* Opp. at 3-5. The Complaint uses images from Cisco documents as evidence, accompanied by descriptive paragraphs tying the language of Cisco's documents to the language of the claims. *See* Opp. at 4-5; *see, e.g.*, Complaint ¶¶ 34-37. For example, the Complaint points to claim 1 of the '249 Patent, which discusses "a method of dynamic management of encrypted data during communication," then correlates that language with the fact that Cisco's ETA technology "analyzes encrypted data traffic to and from Cisco devices without decrypting the underlying data." Complaint ¶ 51. As another example, the Complaint alleges that the Accused Products "monitor and store telemetry data in order to analyze and compare network traffic and then determine a response based on that comparison." *Id.* ¶ 52. Claim 1 includes the limitations of "determining, by the remote server, a content of at least one data packet of the communication" and "comparison of the determined content." *Id.* ¶ 50. An objective reading of the Complaint shows more than a simple recitation of claim language. QPrivacy's Complaint and Cisco's own briefing show that Cisco is fully on notice of the claims against it. *See Digitaldoors, Inc.* at *5. Cisco's Motion should be denied.

### B. QPrivacy's Complaint Properly Alleges Induced Infringement.

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "[I]nducement can be found where there is [e]vidence of active steps taken to

encourage direct infringement." *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1334 (Fed. Cir. 2019) (quoting *Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018) (alterations in original). These "active steps" include "advertising an infringing use," "instructing how to engage in an infringing use," and assisting in performing an infringing use. *Id.* at 1334 (identifying the defendant's employees, who provided technical support for customers performing the infringing acts, as evidence supporting induced infringement); *see also Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1204 (Fed. Cir. 2017) (identifying "instruction manuals" that taught an infringing uses to demonstrate both the defendant's intent to induce infringement and as circumstantial evidence that the defendant's customers were actually induced to directly infringe); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1362-63 (Fed. Cir. 2006) ("instruction sheets" provided by the defendant); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) (same); *accord* Robert A. Matthews, Jr. 2 *Matthews Annotated Patent Digest* § 10:62 (2019) ("Evidence that a defendant provide advertisements, marketing, materials and efforts, or otherwise promoted using a product in an infringing manner can support a finding of inducing infringement."). "Common sense indicates that advertising that your product can be used in conjunction with [an infringing system] . . . gives rise to a reasonable inference that you intend to induce your customers to accomplish these benefits through utilization of the patented method." *In re Bill of Lading*, 681 F.3d 1323, 1341-42 (Fed. Cir. 2012).

QPrivacy identifies specific classes of information relevant to induced infringement such as user manuals and online instruction materials for using the Accused Product and service and customer support through which Cisco "encourages and instructs their customers and end users … to use the Accused Products in ways that directly infringe" the Asserted Patents. Complaint at ¶¶ 39, 56. QPrivacy also asserts that Cisco advertises the Accused Products. *Id.* ¶12. By identifying

6

specific classes of information, QPrivacy makes a plausible showing that discovery will reveal evidence in support of QPrivacy's inducement claims. *See Motiva Patents, LLC,* 408 F. Supp. 3d 819, 831-32 (E.D. Tex. 2019) ("Having alleged that those classes of evidence contain instructions on how to infringe—allegations the Court must take as true—[Plaintiff] has gone beyond mere speculation. *Twombly*, 550 U.S. at 555 (factual allegations suffice if they rise above 'the speculative level').") To require more granular information would "effectively require[] [Plaintiff] to prove, pre-discovery, the facts necessary to win at trial." *Id.* (internal citation omitted).

Further, Defendant's interpretation of *Core Wireless* in its Reply is misplaced. *Core Wireless* itself recognized that "the provision of instructions by an accused infringer may indicate specific intent to induce infringement." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 U.S. Dist. LEXIS 106962, at *4 (E.D. Tex. Aug. 14, 2015). However, *Core Wireless* dismissed the complaint for "failing to allege ***any*** facts . . . even at a basic level," that were specific to the defendant. *Motiva Patents, LLC,* 408 F. Supp. 3d at 832 (citing *Core Wireless* at *4). It did not—and could not—have required identification of specific customers, specific excerpts from the instruction manuals, or specific instructions contained therein. *See, e.g., In re Bill of Lading*, 681 F.3d at 1336. QPrivacy's induced infringement claims, as stated in its Complaint, comply with this Court's, Federal Circuit, and Supreme Court precedent.

### C. QPrivacy's Complaint Properly Alleges Contributory Infringement.

"For purposes of a motion to dismiss under 12(b)(6), a well-pled allegation that an accused product (or its component) has 'no substantial noninfringing uses' is independently sufficient to plead the knowledge element of contributory infringement." *Motiva Patents,* at 835. QPrivacy has made such allegations in its Complaint. *See Complaint* at ¶ 40, 57. Taking these allegations as true, QPrivacy's Complaint properly alleges contributory infringement.

Cisco relies on *Blue Spike* to state the elements of contributory infringement. Reply at 8-9; *Blue Spike, LLC v. Texas Instruments, Inc.*, 2013 U.S. Dist. LEXIS 191697, *174 (E.D. Tex. Sept. 27, 2013). In *Blue Spike*, the plaintiff alleged that certain software products infringed, that the software was installed on other unnamed devices, and that the products' names were enough to infer non-infringing use. *Id.* The Court identified exactly how the plaintiff's allegations were lacking:

> The Court finds these allegations insufficient to support Plaintiff's contributory infringement claims. Although Plaintiff identifies IWS's accused products, Plaintiff does not even suggest what larger devices or software packages incorporate the accused software, thus leaving to complete speculation whether the accused software is material to these unnamed devices or software packages or who produces, sells, or uses the devices or software packages. The Court also finds unavailing Plaintiff's request that the Court infer a lack of a non-infringing purpose based solely on the product names. Accordingly, the Court GRANTS IWS's motion to dismiss Plaintiff's contributory infringement claims.
>
> *Blue Spike, LLC v. Tex. Instruments, Inc.*, 2013 U.S. Dist. LEXIS 191697, at *174 (E.D. Tex. Sep. 27, 2013)

QPrivacy's Complaint contains the exact types of factual allegations that the plaintiff in *Blue Spike* lacked. QPrivacy identifies the technology, ETA, that performs the infringing functions. *E.g.*, Complaint ¶ 34. QPrivacy also identifies specific accused hardware and software products—*i.e.*, larger devices and software packages incorporating the accused ETA technology. Complaint ¶ 24. Then, further distinct from the plaintiff in *Blue Spike*, QPrivacy describes how ETA technology infringes the Asserted Patents, including by attaching ample evidence from Cisco itself describing the technology. *E.g.*, Complaint ¶¶ 34-37. These fact-based allegations are neither conclusory nor attorney argument and are sufficient to plead contributory infringement. *See* Opp. at 10-11; *Advanced Coding Techs. LLC v. Google LLC*, 2024 U.S. Dist. LEXIS 225916, *6 (E.D. Tex. Dec. 12, 2024) (J. Gilstrap).

### D. QPrivacy's Complaint Properly Alleged Post-Suit Willful Infringement.

As both parties agree, there are three elements to a proper willful infringement allegation against Cisco: (1) Cisco knew of the Asserted Patents; (2) Cisco conducted the alleged infringing acts after acquiring that knowledge; and (3) Cisco knew or should have known that its conduct amounted to infringement. *See* Mot. at 11; Opp. at 12. At this point, QPrivacy has only alleged post-suit willful infringement. All three factors are therefore self-evident by the Complaint itself. The Complaint indisputably informs Cisco of the Asserted Patents. Unless Cisco stopped selling and using the Accused Products after being served with the Complaint, Cisco has been performing the alleged infringing acts with knowledge of the Asserted Patents. The remainder of the Complaint describes how the Accused Products infringe the Asserted Patents, meaning that Cisco knew or should have known of its infringement at any point after service of the Complaint. Further, this Court has routinely acknowledged that allegations mirroring those in the Complaint are sufficient for a claim of post-suit willful infringement:

> While the FAC fails to sufficiently allege pre-suit willful infringement, it does sufficiently allege post-suit willful infringement. As this Court has repeatedly recognized, allegations that a defendant continues its allegedly infringing conduct even after receiving notice of a complaint are sufficient to at least state a claim for post-suit willful infringement. Here, Plaintiff alleges in the original Complaint that Comcast's "infringement of the '251 patent has been, is, and *continues to be willful*." Plaintiff further alleges in the FAC that "Comcast's infringement of the ['751 and '934 patents] has been, is, and *continues to be willful*." Additionally, this Court has routinely rejected Comcast's argument that "[a] plaintiff must allege 'facts raising a plausible inference of the egregious behavior required under *Halo*.'"
>
> Accordingly, Plaintiff sufficiently states a claim for post-suit willful infringement.

*Touchstream Techs., Inc. v. Altice USA, Inc.*, 2024 U.S. Dist. LEXIS 45186, *10-11 (E.D. Tex. Mar. 14, 2024) (emphasis in original) (internal citations and quotation marks omitted). QPrivacy has met its burden for alleging willful infringement.

### III. CONCLUSION

Cisco's Motion and Reply attempt to hold QPrivacy to standards beyond what is required at the pleading stage, particularly given that the court must accept all factual allegations in the complaint as true, view the facts in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Cisco has fair notice and is aware of the claims against it. For the reasons discussed above and in QPrivacy's Opposition, QPrivacy has met its burdens for adequately pleading the infringement allegations contained within its Complaint. Therefore, the Court should deny Defendant's Motion.

Dated: January 28, 2025

Respectfully submitted,

*/s/ Robert M. Harkins*

Elizabeth L. DeRieux
State Bar No. 05770585
**Capshaw DeRieux, LLP**
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

G. Blake Thompson
State Bar No. 24042033
Blake@TheMannFirm.com
J. Mark Mann
State Bar No. 12926150
Mark@TheMannFirm.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
(903) 657-8540
(903) 657-6003 (fax)

Robert M. Harkins
CA Bar No. 179525
**Cherian LLP**
2001 Addison St., Suite 275
Berkeley, CA 94704

10

y

bobh@cherianllp.com  
Telephone: (510) 944-0190

Thomas M. Dunham  
DC Bar No. 448407  
Adam A. Allgood  
TX Bar No. 24059403  
**Cherian LLP**  
1901 L St. NW, Suite 700  
Washington, DC 20036  
tomd@cherianllp.com  
adama@cherianllp.com  
Telephone: (202) 838-1560

**ATTORNEYS FOR PLAINTIFF QPRIVACY USA LLC**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing on January 28, 2025, with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all registered users.

*/s/ Robert Harkins*

11