**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| QPRIVACY USA, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-855-RWS *SEALED* |
| | § | |
| CISCO SYSTEMS, INC., | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Plaintiff QPrivacy USA LLC ("QPrivacy") filed this action against Defendant Cisco Systems, Inc. on October 21, 2024 alleging infringement of two related patents directed to improvements in data privacy in terms of managing data before delivery: U.S. Patent Nos. 11,106,824 ("the '824 Patent") and 11,816,249 ("the '249 Patent") (collectively, the "Asserted Patents"). Docket No. 1. After initial motion practice, Plaintiff filed an amended complaint on February 3, 2026. Docket No. 68.

On September 23, 2026, the Court heard oral argument on a variety of motions. Based on the parties' briefing and argument, the Court rules as follows in the order in which the Court heard the parties' motions:

- Cisco's Motion for Summary Judgment of Non-Infringement on Non-Technical Grounds and No Damages for Foreign Sales (Docket No. 142) is **GRANTED-IN-PART** and **DENIED-IN-PART**;
- Cisco's Motion for Summary Judgment of Non-Infringement on Technical Grounds (Docket No. 145) is **DENIED**;
- Cisco's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 101 (Docket No. 141) is **DENIED**;
- QPrivacy's Motion for Partial Summary Judgment of No Anticipation Under 35 U.S.C. § 102(a)(1) (Docket No. 139) is **DENIED**;

- QPrivacy's Motion for Partial Summary Judgment on Defendant's Prior Commercial Use Under 35 U.S.C. § 273, or Alternatively for Relief Under Rule 56(g) (Docket No. 140) is **DENIED**;
- QPrivacy's Motion to Exclude Certain Non-Infringement Opinions and Testimony of Dr. Stephen B. Wicker (Docket No. 136) is **DENIED**;
- QPrivacy's Motion to Exclude Certain Invalidity Opinions and Testimony of Dr. Stephen B. Wicker (Docket No. 137) is **DENIED**;
- Cisco's Motion to Exclude and Strike the Opinions of Dr. Sam Malek (Docket No. 144) is **DENIED**;
- Cisco's Motion to Exclude the Testimony of Plaintiff's Expert James Malackowski and to Strike the Reply Expert Report of James Malackowski (Docket No. 143) is **GRANTED-IN-PART** and **DENIED-IN-PART**;
- QPrivacy's Motion to Exclude Certain Damages Opinions and Testimony of Christopher A. Martinez (Docket No. 138) is **DENIED**; and
- Cisco's Motion to Strike Portions of QPrivacy's Oppositions to Cisco's Motions for Summary Judgment of Non-Infringement (Docket No. 191) is **GRANTED-IN-PART** and otherwise **DENIED-AS-MOOT**.[1]

## LEGAL STANDARD

### I. Motions to Exclude Expert Testimony

Under Federal Rule of Evidence 702, a qualified expert may testify if (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

The Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell*

[1] Briefing on Defendant's motion was not complete as of the September 23, 2026 hearing. While the parties discussed the motion briefly, the Court, in its discretion, opts to rule on Defendant's motion to strike on the papers.

*Dow Pharms. Inc.*, 509 U.S. 579, 597 (1993). "The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.' " *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief. ' " *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

"The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## II. Motions for Summary Judgment

Summary judgment exists, in part, "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). A court may grant summary judgment when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 327. A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment "always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). The moving party, however, is not required to support its motion with materials negating its opponent's claim where the party in opposition carries the burden of proof at trial. *Celotex*, 477 U.S. at 322–23. Instead, the movant may discharge its burden by showing there is an absence of evidence to support the nonmovant's case. *Id.* at 325; *see also*, *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Where a nonmoving party that carries the burden of proof at trial fails to make a showing sufficient to establish an essential element of its case in response to a motion for summary judgment, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323 (citations omitted).

## DISCUSSION

### I. Cisco's Motion for Summary Judgment of Non-Infringement on Non-Technical Grounds and No Damages for Foreign Sales (Docket No. 142)

Defendant moves for summary judgment of non-infringement on five non-technical grounds. Docket No. 142. First, Defendant asserts that summary judgment of no direct infringement is warranted because: (1) Defendant has never sold the accused "pipeline;" and (2) Plaintiff has failed to raise a fact issue as to whether Defendant or any customer has ever made or used the accused pipeline. *Id.* at 1. Second, Defendant argues that summary judgment of no indirect infringement is warranted because Plaintiff fails to raise a fact issue as to whether Defendant is

liable for induced or contributory infringement. *Id.* Third, Defendant asserts that summary judgment of no indirect or willful infringement is warranted because Plaintiff cannot show that Defendant intended to infringe the Asserted Patents. *Id.* Fourth, Defendant asserts that summary judgment of no § 271(f) infringement is warranted because Plaintiff cannot show that any component of the accused pipeline was exported to a foreign recipient. *Id.* Finally, Defendant argues that summary judgment of no damages on foreign sales is appropriate because Plaintiff's damages expert, James Malackowski, only offered conclusory opinions as to such sales. *Id.* at 2.

### A. The Accused "Pipeline" of Cisco Products

Plaintiff does not accuse a single Cisco product of infringement. Rather, Plaintiff accuses a "pipeline of cooperating Cisco components." *See, e.g.*, Docket No. 142-4 (Malek Rep.) at ¶ 33.[2] Plaintiff's infringement argument centers on Cisco's encrypted traffic analytics ("ETA") functionality, but Plaintiff does not accuse ETA alone of infringement. According to Plaintiff and Dr. Samuel Malek, Plaintiff's technical expert, the accused pipeline requires the following steps:

1. An "accused Cisco network device, running Cisco IOS-XE, generates enhanced telemetry from encrypted traffic (the ETA module) and exports it via Flexible NetFlow."
2. Cisco Secure Network Analytics (formerly Stealthwatch) analyzes the telemetry to determine the nature of the traffic and detect threats. Dr. Malek also asserts that, historically, the cloud-based Cognitive Intelligence engine (which is now allegedly succeeded by Cisco XDR) also performs the accused analysis.
3. "[W]hen traffic is found to be non-compliant or malicious, an alert is passed (over Cisco pxGrid) to the Cisco Identity Services Engine (ISE), which, under pre-configured

[2] The parties filed excerpts of their respective experts' reports as exhibits to each of their various motions. For clarity, the Court refers to each expert's report with a single docket entry.

Adaptive Network Control (ANC) policies, may automatically take enforcement action against the host."

4. The "Cisco DNA Center (now Catalyst Center) configures and orchestrates ETA and the TrustSec policies across the device fleet and can host the analytics service."

*Id.* The Accused Products thus "comprise Cisco network devices that support and implement ETA, operating together with Cisco Secure Network Analytics (Stealthwatch), Cognitive Intelligence, Cisco XDR, Cisco DNA, Cisco ISE, and Cisco TrustSec." *Id.* at ¶ 34.

**B. Direct Infringement**

Defendant moves for summary judgment of no direct infringement because Plaintiff has failed to raise a genuine issue of material fact as to whether Defendant ever sold, offered for sale, imported, made, or used the accused pipeline. Docket No. 142 at 6–12.

**1. Sale, Offer for Sale, or Importation**

At the outset, Defendant asserts that it is "undisputed that [Defendant] has never sold, as combined, the accused pipeline." *Id.* at 1. Defendant also argues that, as a matter of law, its sale, offer for sale, or importation of products cannot directly infringe the asserted claims because selling individual components of a patented combination is not direct infringement. *Id.* at 6–7. Additionally, Defendant argues that a product that is "merely configurable . . . into a claimed state does not satisfy [system] claims with 'configured to' language." *Id.* at 7. In response, Plaintiff asserts that Defendant supplies components of an integrated, infringing system with the relevant ETA functionality built in. Docket No. 168 at 2–3. According to Plaintiff, that customers must later configure "does not preclude direct infringement of the system claims" where "those customers are merely responsible for activating preprogrammed functionality of an integrated, infringing system" that Defendant sells in the United States. *Id.*

Plaintiff's arguments are insufficient to create a genuine issue of material fact to preclude summary judgment. As a threshold issue, the parties do not dispute that Defendant has never sold the exact product "pipeline" Plaintiff accuses of infringement. *See id.* at 2. Thus, summary judgment on that basis is appropriate. Instead, Plaintiff asserts that Defendant "sells/imports the claimed systems' components" and that summary judgment is inappropriate because a customer need only "activate" the Accused Products to create the infringing pipeline. *Id.* at 2–3 (relying on paragraphs 156 and 162 of Dr. Malek's report). The Court determines that summary judgment is appropriate for the reasons below.

**a. The *Finjan* and *Fantasy Sports Properties* Courts Were Presented with Different Facts**

Plaintiff argues that that the Federal Circuit previously affirmed direct infringement of system claims by the sale of hardware containing accused software, even though customers had to activate the relevant functionality after sale because the relevant functionality was already present in the underlying software. Docket No. 168 at 4 (relying on *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204–05 (Fed. Cir. 2010) and *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002)). Thus, because Dr. Malek identifies the "source code, commands, and Cisco-designed architecture satisfying each limitation of the asserted claims," Plaintiff asserts that it creates a fact issue precluding summary judgment. *Id.*

The Court disagrees. As Defendant points out, *Finjan* and *Fantasy Sports Properties* are inapposite for two reasons. First, neither case addresses the scenario before the Court, where Plaintiff "*combines* multiple individually sold products to allege infringement of its apparatus claims." Docket No. 178 at 1. *Finjan* involved "eight modules" present in the three accused products that required a customer to "purchase a separate key to activate each individual module." *Finjan*, 626 F.3d at 1202. Critically, "all three products contain[ed] source code for eight software

modules." *Id.* Thus, *Finjan* did not involve claims that required a specific combination of individually sold components to infringe. *Fantasy Sports Properties* involved similar facts, although there was only a single software product at issue. 287 F.3d at 1118. Plaintiff does not meaningfully dispute that the facts in *Finjan* and *Fantasy Sports* differ in its sur-reply; instead, it offers a conclusory argument that those cases "continue to support" an infringement theory based on separately purchased and later activated components. Docket No. 217 at 2. During the September 23, 2026 hearing, Plaintiff asserted that "what we have here is the software is present, you turn it on, and it works." Docket No. 236 (Hr'g Tr.) at 38:7–8. Notwithstanding that such conclusory statements cannot a genuine issue of material fact, Dr. Malek's report never contemplates that a customer can simply "turn on" the allegedly infringing pipeline. *See Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1333 (Fed. Cir. 2009) ("unsupported contentions are legally insufficient to raise a genuine issue of material fact"); *see, e.g.*, Docket No. 142-4 (Malek Rep.) at ¶ 162 (merely opining that "a customer that operates the integrated ETA/Secure Network Analytics/ISE-TrustSec system puts the claimed system as a whole into service").

**b. *Finjan* Does Not Apply to Systems Claims with "Configured To" Language**

Second, and more importantly, the *Finjan* court explicitly noted that the asserted claims "[did] not require that the [accused product] be configured in a particular way to infringe—only that it be programmed for performing the claimed steps." 626 F.3d at 1204; *see also id.* at 1204–05 ("In this case, Finjan's non-method claims describe capabilities without requiring that any software components be 'active' or 'enabled.' ") Here, the two independent system claims—the only claim types to which *Finjan* applies—recite limitations that require a processor "configured to" perform certain functions. Docket Nos. 1-1 ('824 Patent, cl. 17), 1-2 ('249 Patent, cl. 19). Both this Court and the Federal Circuit have held that sales of a product that is merely configurable into

a claimed state does not satisfy claims with "configured to" language. *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1381 (Fed. Cir. 2011); *Huawei Techs. Co. v. Verizon Commc'ns, Inc.*, No. 2:20-CV-00030-JRG, 2021 WL 150442, at *18 (E.D. Tex. Jan. 15, 2021) (finding that " 'configured to' and 'adapted to' plainly do not encompass structure that is merely 'configurable' or 'adaptable' to perform the claim-recited function but is not in a state to perform the function"). Accordingly, *Finjan* and *Fantasy Sports* do not apply.

#### c. The Accused Components Are Not Configured in an Infringing Manner at the Time of Sale

Summary judgment is appropriate because there is no genuine issue of material fact as to whether the accused components have the accused "pipeline" configuration at the time of sale. To be sure, the Court notes that Dr. Malek testified that the accused components are not configured in an infringing manner at the time of sale—a customer would need to separately configure the various accused components in order to infringe. Docket No. 142-5 (Malek Dep. Tr.) at 72:11–25 (testifying that a customer "would have to go through the installation, setup, and configuration" in order to create an infringing pipeline); *id.* at 73:1–6 (testifying that a customer "would need to set up the Cisco routers or switches with the SNA"). Thus, drawing every inference in the non-movant's favor, the Court nevertheless determines that summary judgment is appropriate. For these reasons, Defendant's motion for summary judgment of non-infringement regarding any sale, offer for sale, or importation of the accused pipeline is **GRANTED**.

### 2. Making or Using by Cisco

Defendant argues that there is no evidence that it has ever made or used the accused pipeline. Docket No. 142 at 9. According to Defendant, Dr. Malek's only relevant assertion is a conclusory statement that Defendant used the "complete claimed system in its testing, demonstrations, technical support, and internal operations." *Id.* Defendant also argues that, even if

Plaintiff can show use or testing, Plaintiff cannot prove that it occurred in the United States. *Id.* Finally, Defendant argues that Plaintiff cannot show that any use occurred after October 21, 2018—six years before the filing of the original complaint. *Id.* at 10; *see also* 35 U.S.C. § 286 ("no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."). In response, Plaintiff argues that summary judgment is inappropriate because fact issues exist as to whether Defendant uses the complete claimed system in its product development and testing. *See, e.g.*, Docket No. 168 at 5; Docket No. 217 at 1. As support, Plaintiff points out that Cisco engineers "participated in ETA development" and "Cisco develops and tests code before" the release process. Docket No. 168 at 5.

Summary judgment is appropriate because there is no genuine issue of material fact as to whether Defendant makes or uses the accused pipeline. In its opposition brief, Plaintiff argues that Defendant's witnesses' testimony supports Dr. Malek's opinion that "Cisco itself uses the complete claimed system in its testing, demonstrations, technical support, and internal operations" and that Dr. Malek "reviewed Cisco's source code, technical documents, configuration guides, and deposition testimony" in coming to that conclusion. Docket No. 168 at 4–5 (quoting Malek Rep. at ¶ 162). But Plaintiff's arguments contradict Dr. Malek's report. For example, Dr. Malek may well have reviewed the listed documents in preparing his opinions, but nowhere in his report does he tie such a "review" to his opinion that Defendant "uses the complete claimed system in its testing, demonstrations, technical support, and internal operations." Docket No. 142-4 (Malek Rep.) at ¶¶ 16, 162. Plaintiff's attorney argument—both in its briefing and during the September 23, 2026 hearing—is insufficient to create a genuine fact issue to preclude summary judgment. *Perfect Web Techs.*, 587 F.3d at 1333.

Moreover, there is no evidence in the record demonstrating that Defendant used the entire accused pipeline in the United States after the Asserted Patents issued. For example, Plaintiff relies on testimony from Cisco engineers as support for Dr. Malek's opinion. However, even when taking all reasonable inferences in favor of Plaintiff, its relied-upon testimony is either time-limited or inconclusive as to use, and Defendant's interrogatory response is limited to ETA. It is undisputed that Plaintiff's accused "pipeline" requires more.

First, Dr. David McGrew, a Cisco corporate representative, testified that even if Defendant ever tested the accused pipeline, such testing occurred in 2017—well before the relevant damages period. Docket No. 168-3 (McGrew Dep. Tr.) at 132:17–133:10. Second, Mr. Sarav Radhakrishnan, another Cisco representative, simply testified that source code developers that worked on ETA were located "across the globe" and that were "some folks involved in the United States." Docket No. 168-6 (Radhakrishnan Dep. Tr.) at 101:3–25. Third, as Plaintiff points out, Defendant's "minor maintenance and bug fixes" were limited to ETA. Docket No. 168-5 at 54. While Plaintiff relies on *IOENGINE, LLC v. PayPal Holdings, Inc.* for the notion that summary judgment is inappropriate even where the number of documented test transactions is "vanishingly small," Docket No. 168 at 5, that case differs because it involved concrete testing evidence that could permit a jury to find infringement. 607 F. Supp. 3d 464, 493 (D. Del. 2022). Plaintiff offers no such evidence here. Furthermore, Defendant's comparison to *Acceleration Bay LLC v. Take-Two Interactive* is persuasive. *See* Docket No. 142 at 10 (citing 612 F. Supp. 3d 408, 418 (D. Del. 2020)). There, the court granted summary judgment of no infringement where, even assuming the defendants tested the video games at issue in an infringing manner, such testing occurred before the relevant damages period. *Acceleration Bay*, 612 F. Supp. 3d at 417–18. The court also noted that plaintiff's argument "[was], essentially, that [defendant] is a big company that spends

significant time and resources developing these games, and it is implausible that none of its employees tested these games in a way that would infringe the patents." *Id.* at 418. The court then determined that such "[s]peculation is not enough to survive summary judgment." *Id.*

In sum, Plaintiff asks the Court to speculate as to whether any infringing testing occurred within the damages period in order to find that there is a triable issue of fact for the jury. The Court declines to do so. Such "[c]onclusory and speculative assertions about a material fact are insufficient to create a triable issue on that fact." *Gravelle v. Kaba Ilco Corp.*, 684 F. App'x 974, 978 (Fed. Cir. 2017); *see also Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1184 (Fed. Cir. 2009) ("An expert's unsupported conclusion on the ultimate issue of infringement will not alone create a genuine of material fact.") (citation omitted).

For these reasons, Defendant's motion for summary judgment of non-infringement regarding Defendant's use or testing of the accused pipeline is **GRANTED**.

### 3. Making or Using a Customer's Accused Pipeline

Defendant argues that summary judgment is appropriate because Plaintiff cannot show that Defendant uses a customer's pipeline under *Centillion Data Systems, LLC v. Qwest Communications International, Inc.*, nor can Plaintiff show that Defendant "controls customers' entire pipelines." Docket No. 142 at 10 (citing 631 F.3d 1279 (Fed. Cir. 2011)). In response, Plaintiff asserts that Defendant is liable for direct infringement under *Centillion* because it "tests, demonstrates[,] and supports the accused functionality in its own laboratories," and "supplies and controls every element, including the endpoint whose traffic the accused device analyzes." Docket No. 168 at 5–6. The Court already determined that summary judgment was appropriate because there is not a genuine fact issue as to whether Defendant used or tested the accused pipeline. *See supra* Discussion, §I.B.2. Therefore, the Court need not address Defendant's *Centillion*-based arguments.

**4. Joint or Divided Infringement**

Defendant also argues that summary judgment is appropriate because there is "no evidence that it directs or controls customers' use of their accused pipelines" so as to infringe the asserted method claims. Docket No. 142 at 11. In response, Plaintiff asserts that because Defendant "supplied the integrated products, dictated the configuration, provided training and support, and conditioned receipt of ETA's benefit on following those steps," "summary judgment should be denied." Docket No. 168 at 6–7.

Under *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, Defendant would be liable for its customers' performance of the claimed method in "two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." 797 F.3d 1020, 1022 (Fed. Cir. 2015). The parties do not contend that Defendant and its customers form a joint enterprise. Therefore, the Court focuses on whether Defendant directs or controls its customers' performance of the claimed method to be liable for infringement. *See* Docket No. 1-1 ('824 Patent, claims 1, 9); Docket No. 1-2 ('249 Patent claims 1, 12).

Plaintiff's allegations do not create a genuine issue of material fact. Even if the customer configures the accused pipeline in an infringing manner, Plaintiff fails to allege any facts to establish that Defendant directs its customers' performance other than a reference to "guides" that "prescribe the commands, sequence and architecture required to obtain ETA's benefit." Docket No. 168 at 6. To be sure, the *Akamai* court considered, for example, that Limelight required all of its customers to sign a standard contract, which "delineates the steps customers must perform if they use the Limelight service." *Akamai Techs.*, 797 F.3d at 1024. Plaintiff has not presented any similar facts here. Furthermore, guides aside, nothing in the record demonstrates that Defendant "condition[ed] participation in an activity or receipt of a benefit" based on its customers' performance of the claimed method. *See id.* at 1023. Thus, Plaintiff's divided infringement

arguments fail. While Plaintiff also relies on *Travel Sentry, Inc. v. Tropp*, Docket No. 168 at 7, that case is irrelevant because, as Defendant points out, a memorandum of understanding ("MOU") governed the relationship between the two parties, and the Federal Circuit determined that the MOU was crucial in determining whether one party received a benefit from performing the claimed steps. Docket No. 178 at 3; *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1382 (Fed. Cir. 2017). Here, no such MOU exists between the parties.

For the above reasons, Defendant's motion for summary judgment of non-infringement is **GRANTED** as to divided infringement.

* * *

For the above reasons, Defendant's motion for summary judgment of no direct infringement is **GRANTED**.

### C. Indirect Infringement

Defendant also moves for summary judgment on indirect infringement because: (1) Plaintiff fails to show an underlying act of direct infringement; (2) Plaintiff cannot show knowledge of infringement; and (3) with respect to contributory infringement, Plaintiff cannot show that the Accused Products lack substantial non-infringing uses. Docket No. 142 at 12–16. Defendant also asserts that Plaintiff "disclaimed" its pre-suit indirect infringement claims, *id.* at 15–16, although Plaintiff disputes this in its opposition brief. Docket No. 168 at 12.

#### 1. Pre-Suit Knowledge

Defendant asserts that Plaintiff disclaimed its pre-suit knowledge theories and now seeks to "inject" them into this case via Plaintiff's opposition brief. Docket No. 168 at 12; Docket No. 178 at 4. Plaintiff asserts that pre-suit knowledge has always been disputed, and that it reserved the right to amend its complaint to add allegations of pre-suit indirect infringement. Docket No. 168 at 11–12.

The Court determines that Plaintiff failed to allege pre-suit knowledge in the amended complaint. None of the paragraphs in the amended complaint that Plaintiff cites to allege pre-suit knowledge, as Defendant raises in its motion to strike. Docket No. 168 at 11 and 12 n.45 (citing Docket No. 68 at ¶¶ 42, 60); Docket No. 191 at 4–6 (comparing allegations in original and amended complaints). While Plaintiff's argument hinges on its position that it "reserved the right to amend its Complaint to add allegations of pre-suit indirect infringement," the record demonstrates that it never did so. Thus, Plaintiff's late-stage attempt to assert pre-suit indirect infringement warrants granting Defendant's motion to strike. However, because pre-suit knowledge and willfulness are central to Mr. Malackowski's damages model, the Court addresses Plaintiff's why pre-suit knowledge arguments fail on the merits.

Despite never affirmatively pleading pre-suit knowledge, the Court understands that Plaintiff's pre-suit knowledge argument centers on a single paragraph in the amended complaint. Docket No. 68 at ¶ 28. There, Plaintiff alleges that Defendant has had knowledge of Plaintiff's technology at least since March 6, 2018 because Plaintiff's CEO "met with Cisco representatives, during which [Plaintiff] provided an introduction of the technology covered by the Asserted Patents." *Id.* Plaintiff avers that following that meeting, Defendant "requested additional information regarding the disclosed technology associated with the Asserted Patents 'to help [Cisco] understand where you can fit within [Cisco's] product.' " *Id.*

In its opposition, Plaintiff points to the deposition of Defendant's corporate representative, Ofer Iny. Docket No. 168 at 13 (citing Docket No. 168-13 (Iny Dep. Tr.)). There, Mr. Iny testified that he had no reason to dispute that Privacy Rating, Plaintiff's parent company, had a patent pending on their technology. Docket No. 168-13 (Iny Dep. Tr.) at 29:9–18; Docket No. 236 (September 23, 2026 Hr'g Tr.) at 58:19–22 (Plaintiff's counsel testifying as to the relationship

between Plaintiff and Privacy Rating). But Plaintiff overstates Mr. Iny's answer. First, at his deposition, Mr. Koren, a listed inventor on the Asserted Patents, testified that he spoke with Mr. Iny and mentioned that there was a patent pending, but explicitly stated that he did not raise any infringement allegations. Docket No. 142-12 (Koren Dep.) at 259:8–260:3. Second, any patent pending referred to an Israeli patent application, which has no bearing on pre-suit knowledge of a U.S. patent application. Docket No. 1-1 (listing foreign priority information on '824 Patent); Docket No. 1-2 (same); *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (opining that, even with respect to a pending U.S. application, "a 'patent pending' notice gives one no knowledge whatsoever" and that "[f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents."). Third, while the parties seem to agree that Mr. Iny sent Mr. Koren a follow-up email to learn more about Privacy Rating's technology, nothing in the record indicates that he ever responded. When asked about this email exchange, Plaintiff stated that "Privacy Rating sort of ended the conversation" because "they were concerned that the more information they gave Cisco, the more possibility Cisco would turn around and use that information in their products." Docket No. 236 (September 23, 2026 Hr'g Tr.) at 59:13–60:14. But Plaintiff never makes this argument in its briefing, nor is counsel's argument supported by the record.

The Court determines that a single conversation in 2018, before either of the U.S. patent applications were even filed, is insufficient to establish pre-suit knowledge. Indeed, this Court has dismissed pre-suit knowledge allegations—at the pleading stage—on more compelling facts than those currently before the Court. *Network System Technologies, LLC v. Texas Instruments, Inc. et al*. No. 2:22-cv-482-RWS, 2023 WL 12278025, at *4 (E.D. Tex. Sep. 25, 2023) (dismissing pre-suit knowledge claims that alleged defendant "would have a patent monitoring program in place

to ensure its product development and product roadmaps avoided infringement."); *see also Velocity Communication Technologies, LLC v. Acer, Inc.*, 5:25-cv-99-RWS, ECF No. 26 at 7–10 (E.D. Tex. Feb. 13, 2026) (dismissing pre-suit indirect infringement allegations based on a generic licensing letter). The Court reaches the same conclusion here. Accordingly, Defendant's motion for summary judgment is **GRANTED** with respect to pre-suit indirect infringement.

**2. Post-Suit Induced Infringement**

Induced infringement requires (1) an underlying act of direct infringement by a third party; (2) knowledge of the patents-in-suit; and (3) knowledge that the acts at issue constituted patent infringement. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 828 (E.D. Tex. 2019). Defendant argues that it is entitled to summary judgment because Plaintiff cannot show an underlying act of direct infringement. Docket No. 142 at 13. Defendant also argues that because there is no evidence that it knows that a customer has created or used the accused "pipeline," Plaintiff cannot fulfill the knowledge requirement, either. *Id.* In response, Plaintiff asserts that the record supports "at least some direct use" by Defendant's customers, which is sufficient to preclude summary judgment. Docket No. 168 at 5. Turning to knowledge and intent, Plaintiff asserts that summary judgment is inappropriate because Dr. Malek identifies documents such as "Cisco's ETA Configuration Guide, ETA Non-Fabric Prescriptive Deployment Guide, solution overviews, white papers[,] and technical support" that purport to "instruct and encourage customers to enable and configure ETA, export the telemetry to Secure Network Analytics, define policy in ISE/TrustSec, and apply quarantine/enforcement actions." Docket No. 168 at 8 (quoting Malek Rep. at ¶ 156).

The Court determines that there are triable issues of fact with respect to Plaintiff's induced infringement claims. While Defendant relies on *Fujitsu Ltd. v. Netgear Inc.* for the notion that a "patent owner must show evidence of specific instances of direct infringement," Docket No. 142

at 12–13, the Federal Circuit has also "upheld claims of indirect infringement premised on circumstantial evidence of direct infringement by unknown parties." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009) (noting that "the jury in the present case could have reasonably concluded that, sometime during the relevant [damages period], more likely than not one person somewhere in the United States had performed the claimed method using the [defendant's] products")).

Here, Plaintiff has proffered evidence showing that "[redacted] [are] sending ETA telemetry to XDR today." Docket No. 168 at 7–8; Docket No. 168-15; Docket No. 168-2 (Robertson Dep. Tr.) at 162:2–7. While Defendant correctly points out that "Dr. Malek's infringement theory requires more," Dr. Malek's deposition testimony provides the missing facts necessary to preclude summary judgment. For example, Dr. Malek testified that "it is possible for a Cisco customer to buy different components of the system" and that "some customers may obtain a subset of the components." Docket No. 142-5 (Malek Dep. Tr.) at 18:24–19:1, 23:11–23. Thus, adopting the panel's rationale in *Lucent Technologies, Inc. v. Gateway, Inc.*, the Court determines that it is "more likely than not" that one Cisco customer in the United States implemented the accused pipeline. *See* 580 F.3d at 1318.

Turning to intent, Plaintiff has proffered sufficient evidence—in the form of guides and YouTube videos—to create a fact issue for the jury to resolve. And courts have also determined that knowledge of the patents-in-suit as of the filing of the complaint is sufficient to show post-suit knowledge. *BillJCo, LLC v. Cisco Sys., Inc.*, No. 2:21-CV-00181-JRG, 2021 WL 6618529, at *6 (E.D. Tex. Nov. 30, 2021). Here, Defendant cannot reasonably dispute that it had knowledge of the Asserted Patents as of the filing of the complaint.

Accordingly, for the reasons above, Defendant's motion for summary judgment is **DENIED** with respect to induced infringement under 35 U.S.C § 271(b).

**3. Post-Suit Contributory Infringement**

"To establish contributory infringement, the patent owner must show the following elements . . . : 1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial non-infringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd.*, 620 F.3d at 1326. The parties' dispute centers on whether the "ETA-enabled devices and Secure Network Analytics" have substantial non-infringing uses. Docket No. 142-4 (Malek Rep.) at ¶ 156. Defendant argues that ETA can be used "without modifying data packets or creating whitelists," which, according to Defendant, Dr. Malek acknowledges. Docket No. 178 at 4. In response, Plaintiff argues that Defendant's alleged "analysis-only mode" does not settle substantiality, which Plaintiff asserts "depends on frequency, practicality, intended purpose, and market." Docket No. 217 at 3. Plaintiff also argues that the Federal Circuit's decisions in *Ricoh Co. v. Quanta Computing Inc.* and *Fujitsu Ltd. v. Netgear Inc.* foreclose Defendant's requested relief. Docket No. 168 at 10.

As a threshold issue, the Court addresses Defendant's motion to strike portions of Plaintiff's opposition briefs for allegedly offering late-stage contributory arguments. Docket No. 191 at 10. Defendant's arguments are persuasive, and the Court strikes Plaintiff's contributory infringement arguments consistent with the Court's reasoning in Section XI, *infra*. Notwithstanding that decision, the Court determines that summary judgment is proper because no reasonable jury could determine that the accused ETA functionality does not have substantial, non-infringing uses. At bottom, Plaintiff disputes whether the non-infringing use is "substantial." Docket No. 217 at 3.

There is no genuine dispute that ETA has non-infringing uses, and that those uses are substantial. While Plaintiff relies on *i4i Ltd. P'ship v. Microsoft Corp*., 598 F.3d 831, 851 (Fed. Cir. 2010) to argue that ETA's "analysis-only mode does not settle substantiality," Docket No. 217 at 3, Plaintiff's reliance on *i4i Limited Partnership* is unpersuasive. Nor did Plaintiff ever challenge substantiality in its briefing. Here, there is no genuine dispute that ETA can be deployed without modifying data packets, which the asserted claims require "modifying data packets" to prove infringement. Docket No. 142-4 (Malek Rep.) at ¶¶ 100, 151, 159; *see also* Docket No. 142-5 (Malek Dep. Tr.) at 106:6–20 ("[M]any of the claims have the modifying-the-packet limitation, so to the extent you are suggesting you are not modifying the packets, then I think the combination . . . may not infringe." (alteration in citation)). Moreover, for the one lone claim that does not require data packet modification, Dr. Malek does not rely on ETA. Docket No. 142-4 (Malek Rep.) at ¶ 151; Docket No. 1-1 ('824 Patent, cl. 17).

Next, the Court addresses Plaintiff's reliance on *Ricoh* and *Fujitsu*. Docket No. 168 at 9–10 (citing *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1337–38 (Fed. Cir. 2008) and *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010)). Plaintiff asserts that *Ricoh* is relevant because the "accused drives as a whole had substantial noninfringing uses but the separable modules that performed the claimed method did not," and argues that *Fujitsu* applied the same principle. *Id*. Plaintiff's arguments are unpersuasive. Here, even assuming that Plaintiff properly identified ETA as the "component" necessary to prove contributory infringement, Dr. Malek conceded that ETA can be used without infringing the asserted claims. Docket No. 142-5 (Malek Dep. Tr.) at 106:6–20. Because the accused ETA functionality itself has non-infringing uses, *Ricoh* and *Fujitsu* do not apply. To conclude, in *Vita-Mix Corp. v. Basic Holding, Inc.*, the Federal Circuit held that "non-infringing uses are substantial when they are not unusual, far-fetched, illusory,

impractical, occasional, aberrant, or experimental." 581 F.3d 1317, 1327 (Fed. Cir. 2009). ETA's "analysis only" mode more than meets that standard, and Defendant has met its burden to show an absence of a genuine issue of a material fact.

For the foregoing reasons, Defendant's motion for summary judgment with respect to contributory infringement is **GRANTED**.

### D. Willful Infringement

Defendant moves for summary judgment because Plaintiff cannot show evidence of willfulness, and Dr. Malek does not even contend Defendant's alleged infringement was willful. Docket No. 142 at 17. In response, Plaintiff asserts that summary judgment is inappropriate because the 2018 conversation between corporate representatives discussed above, paired with allegations in the amended complaint, is sufficient to survive summary judgment. Docket No. 168 at 13–15; Docket No. 217 at 3. Plaintiff also avers that Defendant waived certain arguments because it raised them for the first time on reply. Docket No. 217 at 3.

At the outset, the Court determines that Defendant did not waive any pre-suit willfulness arguments because Defendant directly responded to Plaintiff's arguments. Turning to the merits, the Court determined in Section I.C.1, *supra*, that Plaintiff failed to establish pre-suit knowledge. Therefore, the only issue for the Court to address is whether Defendant is entitled to summary judgment on post-suit willfulness. The Court determines that it is.

First, the majority of Plaintiff's cited precedent is irrelevant because it involves motions to dismiss post-suit willfulness claims. Docket No. 168 at 14–15. Adequately pleading post-suit willfulness starkly differs from creating a triable fact issue at the summary judgment stage. More importantly, the one post-pleading stage case upon which Plaintiff relies—*Mojo Mobility, Inc. v. Samsung Electronics Co., Ltd.*—cuts against its argument. No. 2:22-CV-00398-JRG-RSP, 2024 WL 3355122, at *3 (E.D. Tex. June 4, 2024), *report and recommendation adopted*, No. 2:22-CV-

00398-JRG-RSP, 2024 WL 3350852 (E.D. Tex. July 9, 2024). Plaintiff avers that the *Mojo Mobility* court held that post-suit knowledge of the patent is satisfied by the complaint, and that there "persists a genuine issue of material fact based on the totality of the circumstances." Docket No. 168 at 14. But Plaintiff omits a key portion of the court's decision—that "a lack of remedial actions alone is insufficient to demonstrate post-suit willfulness." *Mojo Mobility*, 2024 WL 3355122, at *3. The court clarified that "there persists a genuine issue of material fact based on the totality of the circumstantial evidence, not just a lack of remedial action." *Id.*

Here, Plaintiff provides no evidence demonstrating willful infringement other than Defendant's "lack of remedial actions," which the *Mojo Mobility* court explicitly stated are insufficient. Because Plaintiff alleges no facts for a reasonable jury to determine that Defendant's infringement was deliberate or intentional, Defendant's motion for summary judgment as to willful infringement is **GRANTED**.

**E. Infringement Pursuant to 35 U.S.C. § 271(f)**

Defendant argues that the Court should grant summary judgment of no infringement under 35 U.S.C. § 271(f) because there is no evidence that Defendant exports any Accused Products. Docket No. 142 at 18. As Plaintiff points out in its sur-reply, the parties' "principal dispute is whether the IOS-XE copies installed abroad were U.S.-supplied" so as to satisfy 35 U.S.C. § 271(f) "or replicated abroad from a master." Docket No. 217 at 4. The seminal case on infringement under 35 U.S.C. § 271(f) is *Microsoft Corp. v. AT&T Corp.*, where the Supreme Court held that software copied abroad from a master supplied from the United States does not infringe under § 271(f). 550 U.S. 437, 442 (2007). Here, Plaintiff has failed to provide relevant evidence to establish a genuine of material fact, and therefore summary judgment is appropriate.

First, as discussed in Section IX.F, *infra*, the Court strikes all reliance on the *Centripetal* litigation because it involved different patents, different accused product combinations, and

proceeded in a different court. The Court determines that any *Centripetal* materials are irrelevant, the cited deposition testimony does not meet the requirements of Federal Rule of Civil Procedure 32(a)(8), and the cited testimony and materials are unfairly prejudicial to Defendant.

Having eliminated any *Centripetal* documents from the Court's inquiry, the Court turns to the "thin" record that Defendant allegedly created. *See* Docket No. 168 at 16. As a threshold issue, it is not the Defendant's burden to disprove infringement. *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1095 (Fed. Cir. 2008) ("[T]he burden remains with the patentee to prove infringement, not on the defendant to disprove it."). Both the record and the parties' briefing demonstrate that Defendant objected to Plaintiff's interrogatories on this topic, yet Plaintiff never moved to compel production or request that Defendant supplement interrogatory responses. Docket No. 168 at 16. Plaintiff cannot now assert that Defendant withheld documents that would prove Plaintiff's § 271(f) theory on the eve of trial. And the law is clear—"mere allegations of a genuine issue of a material fact without supporting evidence will not prevent entry of summary judgment." *See, e.g.*, *Republic Sav. Bank, F.S.B. v. United States*, 584 F.3d 1369, 1374 (Fed. Cir. 2009).

Accordingly, because Plaintiff fails to provide evidence that Defendant supplied components of a patented invention under § 271(f)(1), Defendant's motion for summary judgment on these grounds is **GRANTED**. The Court therefore need not reach the parties' arguments under § 271(f)(2).

### F. Damages for Foreign Sales

Defendant argues that it is entitled to summary judgment of no damages for foreign sales because Mr. Malackowski's foreign sales opinions are conclusory and cannot survive *Daubert*. Docket No. 142 at 20. As one example, Plaintiff points out Defendant's "cloud analytics" as giving rise to foreign sales, but Plaintiff never accuses Defendant's cloud analytics of infringement. *Id.* Moreover, Plaintiff only cites to a deposition from the *Centripetal* case for the notion that "cloud

analytics for foreign implementations were operated in the United States." *Id.* at 21. In response, Plaintiff asserts that the Federal Circuit's decision in *Brumfield v. IBG LLC* permits a patentee to recover on "foreign sales if it shows a domestic act of infringement and a sufficient causal relationship to the foreign sales." Docket No. 168 at 19 (citing 97 F.4th 854, 870–71 (Fed. Cir. 2024)).

A strong policy against extraterritorial liability exists in U.S. patent law. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1377 (Fed. Cir. 2016). Moreover, the panel in *Brumfield* stressed the "needed causal relationship to the foreign conduct for which recovery is sought." F.4th at 878–79. No causal relationship exists here, and thus summary judgment on no damages for foreign sales is warranted.

Plaintiff asserts that, for example, Defendant "admitted that it compiles the code for the accused switches and routers in the United States, and the compiled images are loaded on the accused devices before sale and disseminated worldwide." Docket No. 168 at 20. Plaintiff also avers that Mr. Malackowski "identifies evidence that Cisco operated the cloud analytics and Stealthwatch Cloud primarily in a U.S.-based AWS environment." *Id.*

First, the Court's review of Mr. Malackowski's report reveals that the admissions Plaintiff relies on mainly derived from the *Centripetal* case. Docket No. 143-2 (Malackowski Rep.) at 39 nn. 208–212. As discussed in Sections IX.B and IX.F, *infra*, the Court excludes Mr. Malackowski's worldwide sales testimony under *Daubert* on that basis and several others. Thus, the Court's analysis with respect to Defendant's motion is significantly streamlined. Second, Plaintiff asserts that any uncertainty in discovery should be construed against Defendant because it impeded the calculation of damages by failing to produce the requested foreign sales information. Docket No. 168 at 21. Plaintiff's argument is meritless, as demonstrated by its own briefing. Indeed, Plaintiff

moved to compel production on June 1, 2026. Docket No. 217 at 6. However, Plaintiff withdrew the motion to compel, after it "deem[ed] the additional records [to be] sufficient." Docket No. 217 at 6. Moreover, at the hearing, Plaintiff stated that it "felt like there was enough evidence to proceed on so that [it] didn't continue to pursue the motion to compel." Docket No. 236 (September 23, 2026 Hr'g Tr.) at 72:24–73:10. Thus, the Court declines Plaintiff's invitation to resolve any uncertainty against Defendant.

Plaintiff has failed to proffer facts that demonstrate the requisite causal connection between any infringing activity in the United States and foreign sales. Accordingly, Defendant's motion for summary judgment of no foreign sales is **GRANTED**.

*        *        *

For these reasons, Cisco's Motion for Summary Judgment of Non-Infringement on Non-Technical Grounds and No Damages from Foreign Sales (Docket No. 142) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## II. Cisco's Motion for Summary Judgment of Non-Infringement on Technical Grounds (Docket No. 145)

In addition to its motion for summary judgment on non-technical grounds (Docket No. 142), Defendant moves for summary judgment of non-infringement on various technical bases. Docket No. 145. Defendant argues that Plaintiff has not raised a genuine issue of material fact regarding the direct and indirect infringement of the asserted claims for three key reasons: (1) Plaintiff "cannot identify '***the*** remote server' the claims require"; (2) the processor that Plaintiff identifies as infringing does not perform the claimed functions; and (3) Plaintiff "cannot show any functionality that modifies '***the*** data packet' while 'maintaining communication.' " *Id.* at 1. The Court addresses each argument below.

**A. "Remote Server"**

According to Defendant, the claims require a single "remote server" to perform a sequence of steps, but Plaintiff has failed to identify one. *Id.* at 6. Defendant, relying on *Salazar v. AT&T Mobility*, asserts that the functions must be borne by a single server component for Plaintiff to prove infringement. *Id.* at 6–7 (citing 64 F. 4th 1311, 1317–18 (Fed. Cir. 2023)). Thus, Plaintiff's reliance on a "pipeline of cooperating Cisco components" is "fatal to the infringement theory." *Id.* Aside from this issue, Defendant asserts that summary judgment is independently appropriate because "nothing [Plaintiff] accuses acts as a 'remote server.' " *Id.* at 9.

In response, Plaintiff asserts that a fact issue exists with respect to Defendant's "remote server" non-infringement arguments because Defendant misinterprets Dr. Malek's report and ignores his deposition testimony. Docket No. 167 at 5–6. Plaintiff also argues that Defendant's reliance on *Salazar* is misplaced because "*Salazar* does not require that the remote server be a single physical machine." *Id.* at 7–8. Plaintiff also argues that even if no single accused device literally performs every function assigned to the remote server, its doctrine of equivalents theories present a jury question. *Id.* at 10–12; *see also* Docket No. 218 at 1.

The Court determines that fact issues exist to preclude summary judgment. The parties' dispute seemingly centers on a single paragraph in Dr. Malek's report. *See* Docket No. 142-4 (Malek Rep.) at ¶ 169. There, Dr. Malek opines that his "primary opinion remains that a single accused network device is itself the claimed 'remote server.' " *Id.* While Defendant dismisses Dr. Malek's opinion as unsupported by the record, the Court disagrees. Dr. Malek defines a multitude of routers and switches as "accused devices," then defines the "remote server" as the "accused Cisco device running ETA together with Cisco Secure Network Analytics." *see, e.g.*, Docket No. 142-4 (Malek Rep.) at ¶¶ 68–69. While Defendant points to an "ever-shifting coalition of separate components" as its basis for Plaintiff's failure to identify the "remote server," Docket No. 145 at

7, Dr. Malek has provided sufficient evidence that a router or device equipped with the relevant software (*e.g.*, ETA, ISE, and/or TrustSec) is the "remote server." Docket No. 142-4 (Malek Rep.) at ¶ 77. Accordingly, summary judgment is inappropriate.

**B. Processor Configured to Instruct the "Remote Server"**

Next, Defendant argues that Plaintiff cannot show a "processor configured to instruct the remote server." Docket No. 145 at 10. Specifically, Defendant argues that the independent system claims require a "processor" that is "configured to" instruct the "remote server" to perform certain functions. *Id.* at 10–11. But, according to Defendant, Plaintiff fails to identify a processor configured to give those instructions, and Dr. Malek's report does not supply any evidence identifying such a processor. *Id.* at 11–12; Docket No. 182 at 2–3. Defendant also argues that Plaintiff's response fails to identify a processor "configured to instruct." Docket No. 182 at 4. Instead, Plaintiff only points to the "telemetry export," which refers to "data for analysis," as opposed to an instruction analyze that data. *Id.* And Defendant argues that Plaintiff's doctrine of equivalents theory cannot supply the missing relationship because Dr. Malek only offers conclusory opinions. *Id.* at 5, 5 n.3. In response, Plaintiff asserts that Defendant's characterization misstates the Court's claim construction order (Docket No. 135) and that Dr. Malek properly identifies a processor configured to instruct the remote issue. Docket No. 167 at 12–13.

Here, too, fact issues exist that preclude summary judgment. As Plaintiff points out, Dr. Malek identifies the requisite processor throughout multiple paragraphs of his report. *See, e.g.*, Docket No. 142-4 (Malek Rep.) at ¶ 64 (opining that the produced source code confirms that the claimed determination functionality is made on a "per-packet bases" through "per-packet feature processors"), ¶ 151 (opining that "[t]he processor determines the data type from packet characteristics without reading the content, in real time, and evaluates it for compatibility with the list of allowed types/patterns"). In sum, Dr. Malek provides opinions that identify a processor

configured to instruct the remote server to perform various recited functions, and those opinions are based on Defendant's produced source code. Therefore, Dr. Malek's opinions are not so conclusory as to warrant summary judgment.

### C. Data Packet Modification

Defendant argues that summary judgment is also warranted because Plaintiff cannot show that the accused "pipeline" modifies the data packet or maintains communication because Plaintiff's infringement read relies on "analyzing telemetry from the already-forwarded packets and applying access controls to different, later observed packets." Docket No. 145 at 13. But Defendant argues that "none of the accused mechanisms modif[y] the underlying packets" because Plaintiff's modification theories "concern network access, not alteration of private data in the identified packet." *Id.* at 14–16. And, according to Defendant, this "architectural mismatch" is confirmed by Dr. Malek's report, Defendant's corporate witnesses, and Plaintiff's own statements—including arguments made to the PTAB. *Id.* at 14–15. Defendant also argues that the claimed steps require any data packet modification to be "performed '***during communication***' between the user and remote server and require sharing modified data." *Id.* at 16.

In response, Plaintiff argues that Defendant does not apply the plain and ordinary meaning of the claim terms as required by the Court's claim construction order. Docket No. 167 at 13. And, even if Defendant applied plain and ordinary meaning to the claim terms, Defendant's non-infringement arguments raise a fact issue because it is disputed by testimony of Dr. Malek and Defendant's engineers. *Id.* at 13–19; *see also* Docket No. 218 at 6–7 (arguing that Dr. Malek's report creates a fact issue as to whether the data packets are modified).

At the outset, and as confirmed during the hearing, Defendant does not dispute the Court's claim construction. Docket No. 236 (September 23, 2026 Hr'g Tr.) at 114:18–25. Turning to Plaintiff's arguments on the merits, the Court agrees that Plaintiff has raised a fact issue sufficient

to preclude summary judgment. First, Plaintiff points to various paragraphs in Dr. Malek's report that raise fact issues as to whether the accused devices modify data packets. Docket No. 142-4 (Malek Rep.) ¶¶ 53, 55. For example, Dr. Malek opines that the "accused devices both write and change the SGT, and use it to modify the handling of the packet." *Id.* at ¶ 55. While Defendant contends that the SGT does not modify the underlying data (*see, e.g.*, Docket No. 182 at 7), the Court determines that Plaintiff has presented a triable issue of fact precluding summary judgment.

Plaintiff has also raised triable fact issue with respect to whether the data packet modification maintains communication. For example, as part of his doctrine of equivalents opinions, Dr. Malek opines that the "accused configuration quarantines or blocks a non-compliant packet," while maintaining the overall communication, and that "blocking is … an enumerated form of modification in the claims." Docket No. 142-4 (Malek Rep). at ¶ 175. Indeed, the claim language does not contemplate that a single blocked data packet forecloses that the overall communication is maintained. *See, e.g.*, Docket No. 1-2 ('249 Patent, cl. 1). Therefore, because a reasonable jury could determine that the accused devices perform the recited claim limitations, summary judgment is inappropriate.

* * *

For these reasons, Cisco's Motion for Summary Judgment of Non-Infringement on Technical Grounds (Docket No. 145) is **DENIED**.

## III. Cisco's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 101 (Docket No. 141)

Defendant moves for summary judgment on the basis that the asserted claims are ineligible under 35 U.S.C. § 101 because they "recite only generic computer components performing routine computer operations." Docket No. 141 at 1.

### A. The Asserted Claims

Plaintiff asserts 50 claims between the '824 and '249 Patents. Docket No. 141 at 2. Claim 1 of the '824 Patent recites:

> 1. A method of dynamic management of private data during communication between a remote server and a user's device, the method comprising:
>
> **[a]** receiving, by the user's device, a request for retrieval of at least one data packet from the user's device, wherein the user's device is configured to provide a response corresponding to the received request;
>
> **[b]** determining, by the remote server, at least one communication data type of the at least one data packet corresponding to the received request, wherein the at least one communication data type is determined in accordance with characteristics of the communication data packet, and wherein the content of the at least one data packet is not read by the remote server for continued operation by the user's device in real time during communication between the remote server and the user's device;
>
> **[c]** receiving, by the user's device, a privacy preference for the user's device, wherein the privacy preference comprises a list of allowed data packet communication types for sharing during communication;
>
> **[d]** modifying data packets corresponding to requests for sharing of responses that are not compatible with the received privacy preference; and
>
> **[e]** maintaining communication between the remote server and the user's device, with sharing of the modified data packets.

Docket No. 1-1 ('824 Patent), cl. 1.

Claim 1 of the '249 Patent recites:

> 1. A method of dynamic management of encrypted data during communication between a remote server and a user's device, the method comprising:
>
> **[a]** receiving, by the remote server, a communication comprising encrypted data packets;
>
> **[b]** determining, by the remote server, a content of at least one data packet of the communication in accordance with characteristics of the at least one data packet, and wherein the content of the at least one data packet is not decrypted by the remote server, and the determination of the content is performed by the remote server in real time during a communication session between the remote server and the user's device;

**[c]** storing, by the remote server, a preference list;

**[d]** determining, by the remote server, based on a comparison of the determined content, whether to modify the at least one data packet, and if so, modifying the at least one data packet; and

**[e]** sharing, by the remote server, the modified communication.

Docket No. 1-2 ('294 Patent), cl. 1.

### B. Legal Standard

The Supreme Court has established a two-part test for patent eligibility. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014). First, the Court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Id*. at 218. Although all claims embody abstract ideas and other ineligible subject matter at some level, the Court's task is to examine whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc*., 837 F.3d 1299, 1314 (Fed. Cir. 2016). In conducting the Step One inquiry, the Court must "focus on the language of the Asserted Claims themselves" and consider the claims' "character as a whole" in light of the specification. *Synopsys, Inc. v. Mentor Graphics Corp*., 839 F.3d 1138, 1149 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1335 (Fed. Cir. 2016) (internal citations and quotations omitted).

Second, if the claims are directed to an abstract idea, the Court then determines whether the claimed invention includes an inventive concept sufficient to transform the abstract idea into a patent-eligible application. *Alice*, 573 U.S. at 217–18. An inventive concept is one that is "sufficient to ensure that the claim in practice amounts to 'significantly more' than a patent on an ineligible concept." *DDR Holdings, LLC v. Hotels.com, L.P*., 773 F.3d 1245, 1255 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 217–18). The Court "consider[s] the elements of each claim both

individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217 (internal quotations and citations omitted). Put another way, "the second step of the *Alice/Mayo* test is satisfied when the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) (internal quotations and citations omitted). Even if each individual claim element was known in the art, "an inventive concept can be found in the nonconventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). The Federal Circuit has explained that "[w]hile the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software*, 882 F.3d at 1128. As such, "[t]he question of whether a claim element or combination of elements is well understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that "must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

### C. Representativeness

Defendant does not contend that one independent claim is representative of others and avers that its motion "addresses every asserted claim" because the claims are "substantially similar and linked to the same ineligible concept" that the Court may consider together. Docket No. 141 at 5 n.2 (citation omitted). In response, Plaintiff asserts that Defendant fails to establish representativeness. Docket No. 166 at 17. Plaintiff otherwise does not meaningfully dispute that the independent claims are substantially similar. *See id.* at 17–18.

After reviewing the asserted claims, the Court determines that while one independent claim omits the "modifying data packets" limitation that the others contain (*see* Docket No. 1-1 ('824 Patent) at cl. 17), the claims are otherwise "substantially similar" such that treating claim 1 of each asserted patent is appropriate. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,* 776 F.3d 1343, 1348 (Fed. Cir. 2014); *Velocity Commc'n Techs., LLC v. Oneplus Tech. (Shenzhen) Co.*, 835 F. Supp. 3d 782, 790 (E.D. Tex. 2026). Therefore, for efficiency, the Court focuses its *Alice* analysis on method claim 1 in each of the Asserted Patents.

**D. *Alice* Step One**

Defendant argues that the asserted claims are directed to "receiving information, analyzing the information based on its characteristics," "evaluating the information using a set of preferences, and, with respect to some claims, acting on that information according to those preferences." Docket No. 141 at 5–7. Defendant asserts that the Federal Circuit has held similar claims to be abstract and analogizes claim 1 of the '249 patent to those that court held ineligible in *Intellectual Ventures I LLC v. Symantec Corp*, 838 F.3d 1307 (Fed. Cir. 2016). *Id.* at 9–12. Defendant also argues that while the assert patents claim a "real time" information analysis, such analysis only specifies when a determination is performed and therefore does not describe a technical mechanism for how the analysis is performed such that it survives *Alice* Step One. *Id.* at 7.

In response, Plaintiff argues that Defendant's alleged abstract idea "delet[es] necessary limitations," and therefore does not consider the claims in their entirety as required by *Alice* Step One. Docket No. 166 at 6–7. On the merits, Plaintiff argues that the claims are directed to an improvement in computer network functionality and analogizes the claims to those the Federal Circuit held patent-eligible in *SRI International, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, 1303–04 (Fed. Cir. 2019). Docket No. 166 at 7–8. Plaintiff also argues the asserted claims are not abstract because they are directed to "real-time" operation, and none of Defendant's cited cases involved

alterations to analyzed communications. *Id.* at 8. Plaintiff further argues that the claims are not directed to a mental process because a human could not perform the claimed functions with pen and paper. *Id*. at 10–11.

The Court determines that the asserted claims are directed to an abstract idea. While Defendant analogizes the asserted claims to those the Federal Circuit evaluated in *Symantec* (Docket No. 141 at 9–12), the Court reaches its conclusion independent of that case. At their core, the asserted claims are directed to the abstract of idea of receiving, analyzing, and modifying data, which the Federal Circuit has previously held to be abstract. *See, e.g.*, *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367–68 (Fed. Cir. 2019). One of the inventors analogized the core of the invention to a truck with guards around it. Docket No. 141 at 3. The inventor continued, testifying that "[i]f I see a truck that's have 10 guard [sic] around it and a truck with one guard around it, I can understand about the content without seeing what's inside the truck." *Id.*; Docket No. 141-6 at 404:15–20. This high-level description of the core of the invention supports that the claims are directed to a mental process—an abstract idea.

That the asserted claims contain "real-time" functions does not save them from being abstract. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337–38 (Fed. Cir. 2017); *see also Electric Power Group, LLC v. Alstom S.A.*, 830 F. 3d 1350, 1351–53 (Fed. Cir. 2016) (holding that collecting information, analyzing it, and displaying results is an abstract idea, even when undertaken in "real-time"). *Electric Power Group* is instructive. There, despite various details in the claims, the panel ultimately determined that the claims were abstract because "the advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particularly assertedly inventive technology for performing those functions." 830 F.3d at 1354. Here, using claim 1 of the '824 Patent as an

example, the asserted claims similarly "gather" and "analyze" information to later "modify" it while "maintaining communication." Docket No. 1-1, cl. 1. But the claims nor specification fail to tie any of these functions to a specific improvement in computer functionality, nor does the specification explain why, for example, "maintaining communication" during packet modification would render the claims any less abstract.

Plaintiff's reliance on *SRI International v. Cisco Systems, Inc.* is unpersuasive. There, the Federal Circuit held that the claims were directed "to solv[ing] a technological problem arising in computer networks: identifying hackers or potential intruders into the network." 930 F.3d at 1303. The asserted claims here provide no such technological improvement because they are merely directed to selecting and implementing a user's privacy preferences, with no claimed feature that improves how computers function. At bottom, the claims are simply directed to analyzing data, with no details about how "modifying data packets" qualifies as such an improvement. The asserted claims fail under *Alice* Step One.

### E. *Alice* Step Two

Having established that the asserted claims are directed to an abstract idea, the Court moves on to Step Two of the *Alice* analysis. Defendant argues that the asserted claims do not supply an inventive concept sufficient to render the claimed abstract idea patent eligible for three key reasons. Docket No. 141 at 16–17. First, Defendant argues that the claims fail at *Alice* Step Two because they do not require, for example, any "specialized processor" or "improved memory" therefore cannot supply an inventive concept. *Id.* at 17. Second, Defendant argues that the dependent claims merely claim "conventional operations" that were in place "well before the priority date." *Id.* at 19. Third, Defendant argues that the asserted claims simply state the "logical progression of the abstract process" and do not create a new computer capability. *Id.* at 20.

In response, Plaintiff first asserts that the claimed limitations were not conventional as of April 9, 2017. Docket No. 166 at 12. Plaintiff also faults Defendant for evaluating the components "one at a time." *Id.* at 12–13. Second, with respect to the claims as an ordered combination, Plaintiff challenges Defendant's reliance on Dr. Wicker's report, arguing that his opinion is "unsupported." *Id.* at 14. And because Dr. Malek disputes what Defendant's pre-priority date materials establish, a fact issue exists that precludes summary judgment. *Id.* at 14–15. Third, with respect to the dependent claims, Plaintiff argues that Defendant has failed to establish that they are not patent-eligible, and therefore fact issues exist such that the jury should decide eligibility. *Id.* at 16–17.

The Court determines that fact issues exist that preclude summary judgment at *Alice* Step Two. Here, the record demonstrates that the parties dispute whether the claimed combination was well-understood, routine, and conventional, based on, for example, Cisco engineers' testimony that encrypted traffic analytics was "an exciting new capability" as of April 2017. Docket No. 216 at 4. Moreover, the parties dispute what Defendant's cited documents stated. Docket No. 166 at 14–15. For example, Dr. Malek disputes Dr. Wicker's reliance on a 2016 research paper demonstrates that the claimed combination was well understood and routine on the basis that a "single research paper published roughly six months before the priority date, presented at an academic workshop and describing new techniques, is evidence of emerging research," rather than demonstrating that the claimed functions were directed to well-understood, routine, and conventional activity. Docket No. 166-3 (Malek Rebuttal Rep.) at ¶ 487. Taking all reasonable inferences in favor of the non-moving party, Plaintiff has demonstrated that triable issues of fact preclude summary judgment.

* * *

For these reasons, Cisco's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 101 (Docket No. 141) is **DENIED**.

## IV. QPrivacy's Motion for Partial Summary Judgment of No Anticipation Under 35 U.S.C. § 102(a)(1) (Docket No. 139)

Plaintiff moves for partial summary judgment of no anticipation under 35 U.S.C. § 102(a)(1) because Defendant "has failed to identify any pre-priority public use, sale, or printed publication disclosing a single system that performs the completed claimed arrangement." Docket No. 139 at 1.

### A. Public Availability of the Prior Art

Plaintiff asserts that Defendant and Dr. Wicker fail to establish that any "claim-complete prototype" was publicly available before the April 9, 2017 priority date of the Asserted Patents. *Id.* at 8–9. According to Plaintiff, even if Defendant can show use before April 9, 2017, such use was confidential and therefore does not anticipate under § 102(a)(1). *Id.* at 9. In response, Defendant argues that it released products that meet each of the asserted claims' limitations prior to April 9, 2017, which creates a fact issue to preclude summary judgment. *See* Docket No. 172 at 2.

The Court determines that Defendant has raised a fact issue as to whether its relied-on prior art was in public use or on-sale under 35 U.S.C. § 102(a)(1) before the priority date. Defendant references numerous Cisco products that Dr. Wicker mapped to the allegedly infringing functions and provides the dates that each product was publicly available. *See, e.g.*, *id.* For example, Defendant and Dr. Wicker offer testimony showing that pre-priority date versions of the Accused Products, such as Stealthwatch and the accused Identity Services Engine, were publicly available as early as 2004 and 2011, respectively. *Id.*; *see also* Docket No. 169-2 (Corrected Wicker Invalidity Rep.) at ¶¶ 265–66 (opining that Stealthwatch "has been a commercially available product since at least 2004" and that, when Defendant acquired this technology from another

company in 2015, "Stealthwatch was already a widely deployed and commercially available enterprise network analytics platform with an established customer base"). While Plaintiff characterizes other product releases as "internal," the Court determines that Defendant has sufficiently raised a fact issue to preclude summary judgment.

**B. Dr. Wicker's Reliance on the Accused Pipeline for his Invalidity Analysis**

Having established that fact issues exist as to whether the prior art on which Dr. Wicker relies was publicly available before the April 9, 2017 priority date, the Court turns to whether Dr. Wicker's reliance on Plaintiff's infringement arguments to develop his invalidity opinions is appropriate. Plaintiff rejects Defendant's assertion that the earlier versions of the Accused Products are "materially the same" because it is based on unreliable evidence. Docket No. 139 at 14. Thus, because Defendant cannot show that its pre-priority date products are the Accused Products, Defendant's anticipation claim fails, and summary judgment is appropriate. *Id.* at 14–15.

In response, Defendant points out that Plaintiff's infringement accusations center on a "pipeline" of separate components that it has never sold (*see supra* Discussion, § I.A), yet Plaintiff "demands that [Defendant] identify a single, branded, pre-priority product." Docket No. 172 at 1. Moreover, Defendant argues that Dr. Wicker "traced [Plaintiff's] mappings to pre-priority products and code limitation-by-limitation across hundreds of pages." *Id.* at 10. Defendant argues that "[c]ourts permit 'using multiple references to describe a single prior art system for the purpose of showing anticipation,' " and that relying on infringement arguments to develop an invalidity defense is appropriate. Docket No. 172 at 2, 7–10 (citing *IP Innovation L.L.C. v. Red Hat, Inc.*, No. 2:07-cv-447-RRR, 2010 WL 9501469, at *4 (E.D. Tex. Oct. 13, 2010) and *EireOg Innovations Ltd. v. Cisco Sys., Inc.*, No. 2:24-cv-00224-RWS-RSP, 2026 WL 931629 (E.D. Tex. Apr. 6, 2026)).

The Court determines that Plaintiff's challenges to Dr. Wicker's methodology are more appropriate for a *Daubert* motion, rather than a motion for summary judgment, and the Court

addresses those challenges elsewhere in this Order. *See infra* § VII (addressing Plaintiff's motion to exclude certain invalidity opinions and testimony of Dr. Wicker (Docket No. 137)). Still, the Court briefly reiterates its analysis here.

First, other courts have approved Dr. Wicker's invalidity approach, as illustrated in *IP Innovation*. 2010 WL 9501469, at *4 (permitting an expert to use "multiple references to describe a single prior art system."). Here, Dr. Wicker does precisely what the *IP Innovation* court permitted because he uses multiple references to describe the single "Cisco Prior Art Accused Functionality." Docket No. 169-2 (Corrected Wicker Invalidity Rep. at ¶ 383 n.12). Plaintiff also misinterprets this Court's decision in *EireOg* as to what is required for anticipation. There, the Court permitted Defendant's expert to consider the asserted claims' scope for anticipation purposes. 2026 WL 931629, at *3 n.2. The Court noted that "[o]therwise, Plaintiff would hold license to twist the claims without accountability." *Id.*

Indeed, Plaintiff acknowledges that the "question is whether a reasonable jury could find anticipation on this record by clear and convincing evidence." Docket No. 173 at 3. Dr. Wicker's analysis supplies the necessary facts for the jury to make that determination. And Plaintiff tacitly concedes that summary judgment is inappropriate because "Cisco supplies [] conflicting evidence." *Id.* at 4. Whether the predecessor products that Dr. Wicker identifies are "materially the same" as the currently Accused Product pipeline is a topic that Plaintiff can cross-examine Dr. Wicker on at trial.

* * *

For these reasons, QPrivacy's Motion for Partial Summary Judgment of No Anticipation Under 35 U.S.C. § 102(a)(1) (Docket No. 139) is **DENIED**.

**V. QPrivacy's Motion for Partial Summary Judgment on Defendant's Prior Commercial Use Under 35 U.S.C. § 273, or Alternatively for Relief Under Rule 56(g) (Docket No. 140)**

Plaintiff moves for partial summary judgment on Defendant's prior commercial use defense under 35 U.S.C. § 273 because Defendant identifies no evidence that it commercially used any infringing subject matter in the United States before April 9, 2016—one year before the priority date of the Asserted Patents. Docket No. 140 at 1. Alternatively, Plaintiff requests an order under Rule 56(g) establishing release-timeline facts based on Defendant's commercial use defense in its answer. *Id*. (citing Docket No. 69 at 13, ¶ 10). Plaintiff asserts that any pre-priority use—mainly consisting of research and academic disclosures—of the accused functionality was internal, therefore warranting summary judgment under § 273 because Defendant did not commercially use subject matter that would otherwise infringe any asserted claim. *Id.* at 9. Plaintiff avers that its requested relief differs from that sought in its companion partial summary judgment motion (Docket No. 139). *Id.* at 1. Plaintiff further argues that, even if Defendant can show prior commercial use, it does not match the functionality of the products in the accused "pipeline" such that § 273 applies. *Id.* at 12.

In response, Defendant asserts that "[t]he principal components of that alleged pipeline were in commercial use 'well before' " the April 9, 2016 cutoff date under 35 U.S.C. § 273(a)(2), and Dr. Wicker mapped these pre-priority products to the accused "pipeline." Docket No. 171 at 2–3, 6. According to Defendant, Plaintiff ignores that § 273(a)(1) expressly covers "internal" commercial use, and therefore summary judgment is insufficient for that reason alone. *Id*. at 14–15. Defendant asserts that its evidence is not confirmed to internal activity because, for example, it produced reports identifying customer engagements and confirming that Defendant had already released working software. *Id.* Defendant avers that such evidence is sufficient to create a fact

dispute to preclude summary judgment and asserts that the Court should decline Plaintiff's request for Rule 56(g) findings because Plaintiff lists facts that are disputed. *Id.* at 15.

Plaintiff has failed to show that there is an absence of a genuine dispute of material fact such that summary judgment is appropriate. Here, there are fact issues for a jury to decide with respect to whether Defendant commercially used—either internally or externally—the allegedly infringing subject matter before April 9, 2016. That the parties dispute the extent to which Defendant's activity was "commercial" underscores why summary judgment is inappropriate. The Court also declines to issue an order pursuant to Federal Rule of Civil Procedure 56(g) establishing release timeline facts based on Defendant's priori commercial use defense (Docket No. 69 at 13, ¶ 10) because those facts are disputed.

* * *

For these reasons, QPrivacy's Motion for Partial Summary Judgment on Defendant's Prior Commercial Use Under 35 U.S.C. § 273, or Alternatively for Relief Under Rule 56(g) (Docket No. 140) is **DENIED**.

## VI. QPrivacy's Motion to Exclude Certain Non-Infringement Opinions and Testimony of Dr. Stephen B. Wicker (Docket No. 136)

Plaintiff moves to exclude certain opinions offered by Defendant's technical expert, Dr. Stephen B. Wicker, because he improperly: (1) accepted [redacted] apportionment cap from Defendant's damages expert, Mr. Christopher Martinez; (2) offered non-technical opinions directed to Defendant's good faith, intent, and willfulness; (3) disregarded the Court's claim construction order; (4) served as a "substitute Cisco corporate witness"; and (5) extended his non-infringing alternative testimony "beyond technical feasibility." Docket No. 136 at 1–2. The Court addresses each argument below.

A. [redacted] **Apportionment Cap and Sales-Driver Opinions**

Plaintiff argues that Dr. Wicker's [redacted] apportionment factor is unreliable because he merely adopted it from Defendant's damages expert, Mr. Martinez, who calculated the apportionment factor for the accused SNA/Stealthwatch functions based on usage data. *Id.* at 5. Plaintiff criticizes Dr. Wicker's testimony that ETA did not drive sales for similar reasons. *Id.* at 5–6. In response, Defendant asserts that Dr. Wicker's [redacted] apportionment opinion is based on technical analysis and that he connects the [redacted] to Accused Products other than SNA/Stealthwatch. Docket No. 170 at 1–2. Moreover, Defendant argues that it is inconsequential that Dr. Wicker did not calculate the [redacted] figure himself because that was Mr. Martinez's responsibility as Defendant's damages expert, and relying on other experts' findings is proper. *Id.* at 2–3 (collecting cases and noting that "Mr. Martinez shared his calculations based on case-specific usage data, while Dr. Wicker explained the technical relationship between the Accused Products"); *see also* Docket No. 209 at 2. Turning to sales drivers, Defendant asserts that Dr. Wicker's opinions withstand *Daubert* scrutiny because they involved a comprehensive analysis based on the record. Docket No. 170 at 3–4; Docket No. 209 at 3.

Plaintiff fails to show that Dr. Wicker's apportionment opinions warrant exclusion under *Daubert*. First, an expert may rely on another expert's opinion to fill in gaps in knowledge. *See, e.g.*, *Longhorn HD LLC v. Netscout Sys., Inc.*, No. 2:20-CV-00349-JRG-RSP, 2022 WL 903934, at *3 (E.D. Tex. Mar. 27, 2022). Here, the record demonstrates that Dr. Wicker considered Mr. Martinez's calculated [redacted] apportionment factor based on usage as part of his more comprehensive independent technical analysis. Docket No. 170-2 (Wicker Non-Infringement Rep.) at ¶¶ 1473–74. Such reliance does not raise any concerns under *Daubert*, and any challenges to Dr. Wicker's apportionment analysis are more appropriate for cross-examination. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 596 (1993) ("Vigorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.”). Therefore, Plaintiff’s motion to exclude Dr. Wicker’s apportionment and sales driver opinions is **DENIED**.

### B. Cisco’s Knowledge, Good Faith, Intent, or Willfulness

Plaintiff argues that Dr. Wicker should be precluded from testifying that Defendant, for example, acted in good faith or did not intend to induce infringement because those are not technical opinions. Docket No. 136 at 7. Defendant argues that the Court should not strike these opinions because experts are permitted to testify as “to their understanding of the relevant law, provided they do not opine about the meaning of a law,” and this Court previously permitted “an expert to explain record evidence bearing on intent and knowledge.” Docket No. 170 at 4–5 (citations omitted); *see also* Docket No. 209 at 3–4.

Plaintiff’s challenges to Dr. Wicker’s opinions do not warrant exclusion. As Defendant makes clear, Dr. Wicker based his opinion on his extensive technical analysis, not “Cisco’s subjective state of mind.” Docket No. 170 at 4. Courts in this district have permitted experts to “explain and point to the underlying factual record and other evidence bearing on issues of intent and knowledge.” *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-CV-492-RWS-KNM, 2017 WL 4173468, at *6 (E.D. Tex. Sept. 21, 2017). To the extent Plaintiff believes that Dr. Wicker offers any legal opinion, Plaintiff may object at trial. Therefore, Plaintiff’s motion to exclude Dr. Wicker’s opinions directed to knowledge and intent required for indirect and willful infringement is **DENIED**.

### C. Application of Incorrect Claim Constructions

Plaintiff asserts that Dr. Wicker purports to replace the Court’s claim construction order with narrower constructions reflected in his report. Docket No. 136 at 7–11. Defendant points out that it is improper to fault Dr. Wicker for not reviewing the claim construction order, as the Court

did not issue it until after Dr. Wicker served his opening report. Docket No. 170 at 5. Defendant also notes that to the extent that Dr. Wicker's opinions on the "preference list limitation"—the only term for which the Court issued a construction—are inconsistent with the Court's claim construction order, Defendant withdraws those portions of Dr. Wicker's report. *Id.* at 5–6.

The Court determines that no *Daubert* issue exists because Dr. Wicker has withdrawn the portions of his report that allegedly apply incorrect claim constructions. To the extent that Plaintiff believes Dr. Wicker offers testimony outside the scope of his report, Plaintiff may raise an objection at trial. Therefore, this portion of Plaintiff's motion to exclude is **DENIED**.

**D. Testimony as Cisco Corporate Witness**

Plaintiff argues that Dr. Wicker's report states that "no customer or Cisco personnel created or used the accused ETA/SNA/ISE pipeline," but that Dr. Wicker's deposition revealed that those are not "independent technical findings." Docket No. 136 at 12. According to Plaintiff, such testimony demonstrates that Dr. Wicker will testify as Defendant's corporate witness and therefore his opinions warrant exclusion. *Id.* Plaintiff faults Dr. Wicker for relying on Defendant's interrogatory responses instead of raw customer-usage data, and admitting that he did not, for example, review sales records or deployment records. *Id*. In response, Defendant argues that "Dr. Wicker conducted an extensive review of the record" to determine that there was no "evidence of the complete accused pipeline being configured or used." Docket No. 170 at 9. Defendant asserts that such opinions are permissible expert testimony. *Id.* (collecting cases). Further, Defendant argues that courts regularly permit experts to rely on interrogatories and witness interviews, and that Plaintiff may criticize these forms of evidence at trial. *Id.* at 10–11; Docket No. 209 at 4.

The Court agrees with Defendant. Plaintiff's challenges are directed to the results of Dr. Wicker's analysis, not his methodology. *See* Docket No. 136 at 12. Dr. Wicker may rely on interrogatories and witness interviews to form the basis of his opinions. *See, e.g.*, *Image Processing*

*Techs., LLC v. Samsung Elecs. Co.*, No. 2:20-CV-50-JRG-RSP, 2020 WL 2499736, at *5 (E.D. Tex. May 14, 2020; *see also Genband US LLC v. Metaswitch Networks Corp.,* No. 2:14-cv-33-JRG-RSP, 2016 WL 125503, at *3 (E.D. Tex. Jan. 9, 2016) (declining to strike expert's opinions that relied on employees' testimony). While Plaintiff faults Dr. Wicker for not reviewing "matched sales records, deployment records, professional-services engagements, or validated-design records," Plaintiff provides no support for this alleged requirement. *See* Docket No. 136 at 12. The *Image Processing Technologies* court addressed similar arguments, noting that "[e]ssentially, [defendant] complains that [plaintiff's expert] uses different underlying facts than they would. These are not criticisms of methodology." 2020 WL 2499736, at *5. The Court reaches the same conclusion here. Accordingly, this portion of Plaintiff's motion to exclude is **DENIED**.

**E. Non-Infringing Alternatives**

Plaintiff asserts that "Dr. Wicker lacks a reliable analysis to opine on customer acceptance, commercial adequacy, actual adoption, willingness to pay, or economic consequence." Docket No. 136 at 14. According to Plaintiff, Dr. Wicker admitted that he does not have any data showing that customers use the proffered non-infringing alternatives, and that Dr. Wicker's son "owned a Catalyst 9300 but did not use ETA," even though he was not identified in Dr. Wicker's report. *Id.* Plaintiff asserts that "the son's anecdote" is inadmissible. *Id.* In response, Defendant argues that Dr. Wicker's opinions on acceptable non-infringing uses for the Accused Products are grounded in technical expertise and the record, and Plaintiff instead focuses on testimony that Plaintiff elicited during Defendant's deposition. Docket No. 170 at 13–14. Defendant argues that the "son's anecdote" that Plaintiff focuses on was given in response to Plaintiff's question, thus undermining any argument that the testimony should be excluded for creating unfair surprise or prejudice. *Id.* at 14. Defendant further argues that Plaintiff's argument that Dr. Wicker's opinions require "market

evidence" is unfounded because Plaintiff "obtained no such evidence to support their position that ETA is critical to customers." *Id.* at 15; Docket No. 209 at 5.

Plaintiff has not met its burden to show that those opinions warrant exclusion. The Court determines that Dr. Wicker's methodology is reliable because his report contains analysis with respect to non-infringing configurations and that, based on his analysis, he could not identify any Cisco customers who employed the accused timeline. Docket No. 170-2 (Wicker Non-Infringement Rep.) at ¶ 1418. This is a fact-based inquiry that passes muster under *Daubert*. Moreover, Plaintiff only offers a conclusory statement that Dr. Wicker's analysis was unreliable. With respect to the "son's anecdote," Dr. Wicker provided that example in response to questions during his deposition. The Court notes that it is nevertheless an example showing customer use of ETA. As noted elsewhere in this section, Plaintiff is free to challenge Dr. Wicker's opinions on cross-examination. Accordingly, this portion of Plaintiff's motion to exclude is **DENIED**.

* * *

For these reasons, QPrivacy's Motion to Exclude Certain Non-Infringement Opinions and Testimony of Dr. Stephen B. Wicker (Docket No. 136) is **DENIED**.

## VII. QPrivacy's Motion to Exclude Certain Invalidity Opinions and Testimony of Dr. Stephen B. Wicker (Docket No. 137)

Plaintiff moves to exclude certain invalidity opinions in Dr. Wicker's report. Docket No. 137 at 1. Specifically, Plaintiff requests exclusion on the basis that Dr. Wicker: (1) improperly based his public use and prior commercial use opinions on confidential development activity; (2) improperly based his "version-continuity" opinions on "undisclosed, unreproducible conversations rather than a disclosed technical analysis"; (3) fails to identify a single pre-priority date ETA system and instead relies on Plaintiff's infringement theories; and (4) improperly based

his opinions on "certain improper legal conclusions." *Id.* The Court addresses each argument below.

### A. Public Use and Prior Commercial Use[3]

Plaintiff asserts that Dr. Wicker does not explain why confidential source code or development activity would have been public use for invalidity and fails to identify any commercial use under 35 U.S.C. § 273. Docket No. 137 at 3–5. Defendant responds that Plaintiff misreads Dr. Wicker's discussion of source code. Docket No. 167 at 3. According to Defendant, Dr. Wicker relies on source code as evidence of what functionality existed in products otherwise shown to have been publicly available, and that Plaintiff's characterization of Dr. Wicker's opinions as "thin" goes to the weight of the evidence, not Federal Rule of Evidence 702. *Id.* at 3–8; Docket No. 197 at 1.

Plaintiff generally raises merits disputes that are ripe for cross-examination, not issues with Dr. Wicker's methodology that warrant exclusion under *Daubert*. The Court determines that Dr. Wicker's report demonstrates that he properly analyzed public and commercial use. *See, e.g.*, Docket No. 169-2 (Corrected Wicker Invalidity Rep.) at ¶¶ 245–49, 251. Accordingly, Plaintiff's motion to exclude is **DENIED** with respect to Dr. Wicker's public and prior commercial use opinions.

### B. Version-Continuity Opinions

Plaintiff argues that Dr. Wicker's opinion that Defendant's previous product functionality was "materially the same" as the currently accused pipeline warrants exclusion because it was based on "undisclosed conversations with Cisco employees" and Dr. Wicker otherwise does not

[3] At the outset, Plaintiff asserts that Dr. Wicker relied on incorrect legal stands for prior art and prior commercial use, and therefore Dr. Wicker's opinions should be excluded on this basis alone. Docket No. 137 at 2–3. Dr. Wicker issued errata and served a corrected report to rectify any incorrect citations to legal standards. Docket No. 169-2. Therefore, this issue is moot.

disclose the basis for his opinion. Docket No. 137 at 5–6. In response, Defendant argues that Dr. Wicker's partial reliance on conversations with Cisco engineers, rather than conducting a "release-by-release" comparison of the Accused Products is permissible; moreover, the four challenged paragraphs appear within an extensive factual record. Docket No. 167 at 8.

Dr. Wicker's version-continuity testimony is sufficient to survive *Daubert* scrutiny. *Genband US LLC v. Metaswitch Networks Corporation* is central to the parties' dispute. No. 2:14-CV-33-JRG-RSP, 2016 WL 125503 (E.D. Tex. Jan. 9, 2016). In *Genband*, the court considered that plaintiff's expert relied on conversations with Genband employees but noted that he "disclose[d] this fact in his report along with an explanation of his reasoning and methodology." *Id.* at *3. The court determined that such disclosure was sufficient under Rule 702 and that the expert's conversations "may be fertile ground for cross examination." *Id.*

The Court determines that, consistent with *Genband*, Dr. Wicker's reliance on conversations with Defendant's employees withstands *Daubert* scrutiny. And Dr. Wicker performed more analysis than the expert in *Genband* because he incorporated the Cisco engineers' testimony into his report. *See, e.g.*, Docket No. 169-2 (Corrected Wicker Invalidity Rep.) at ¶¶ 262, 269, 273, 282. Again, Plaintiff's challenges to Dr. Wicker's opinion are appropriate for cross-examination. Accordingly, Plaintiff's motion to exclude is **DENIED** with respect to Dr. Wicker's version-continuity opinions.

**C. ETA-Based Anticipation Theory**

Plaintiff challenges Dr. Wicker's anticipation opinions as conclusory because Defendant cannot show that a complete system encompassing the accused functionality was sold before the priority date. Docket No. 137 at 6–8; Docket No. 177 at 5. In response, Defendant notes that the accused "pipeline," according to Dr. Malek, "requires at least two Cisco products, plus a separate 'user's device.' " Docket No. 169 at 10. Thus, Defendant contends that it is proper for Dr. Wicker

to analyze the allegedly infringing system to evaluate whether the same alleged functionality existed before April 9, 2017—the priority date of the Asserted Patents. *Id.* at 11–12.

Dr. Wicker's opinions are sufficient to survive *Daubert* scrutiny. Both this Court and the Federal Circuit have approved conditionally admitting infringement for purposes of proving anticipation. *See, e.g.*, *Vanmoor v. Wal-Mart Stores, Inc*., 201 F.3d 1363, 1366 (Fed. Cir. 2000) (noting that defendant denied infringement, but "by conceding infringement for purposes of the summary judgment motion and [their] on sale defense, properly pled in the alternative."); *EireOg Innovations Ltd. v. Cisco Sys. Inc*., No. 2:24-CV-00224-RWS-RSP, 2026 WL 931629, at *3 n.2 (E.D. Tex. Apr. 6, 2026) ("[Defendant's expert's] report can address the claims' validity taking into account the claim scope argued by Plaintiff. Otherwise, Plaintiff would hold license to twist the claims without accountability."). Accordingly, Plaintiff's motion to exclude is **DENIED** with respect to Dr. Wicker's ETA-based anticipation theories.

### D. Improper Legal Conclusions Regarding Patent Eligibility

Plaintiff faults Dr. Wicker for opining that the asserted claims are directed to an abstract idea and therefore lack an inventive concept because such an opinion is a question of law reserved for the Court. Docket No. 137 at 8–9. Plaintiff asserts that courts "routinely exclude" such legal conclusions under *Daubert*. *Id*. at 9. In response, Defendant contends that the disputed paragraphs are "overwhelmingly factual testimony about the state of the art and what a person of ordinary skill would have understood before the priority date." Docket No. 169 at 13. While the Court agrees with Plaintiff that an expert cannot offer legal opinions, Plaintiff is free to object to Dr. Wicker's testimony at trial to the extent Plaintiff believes that Dr. Wicker offers such opinions. Exclusion under *Daubert* is improper.

* * *

For these reasons, QPrivacy's Motion to Exclude Certain Invalidity Opinions and Testimony of Dr. Stephen B. Wicker (Docket No. 137) is **DENIED**.

## VIII. Cisco's Motion to Exclude and Strike the Opinions of Dr. Sam Malek (Docket No. 144)

Defendant moves to exclude certain opinions of Dr. Sam Malek on the grounds that: (1) Dr. Malek's technological apportionment opinions are unreliable; and (2) Dr. Malek offers opinions beyond Plaintiff's infringement contentions. Docket No. 144 at 1.

### A. Dr. Malek's Technological Apportionment Opinions

Defendant argues that Dr. Malek's methodology fails because he assigned the "full weight" of the ETA feature to the Asserted Patents, while simultaneously admitting that it is possible that not all ETA deployments infringe. Docket No. 144 at 5. Defendant also asserts that Dr. Malek "cherry-picked" features to incorporate into his technological apportionment calculations but never established that such features are comprehensive or representative of the Accused Products. *Id.* at 6–7. Defendant also faults Dr. Malek for being inconsistent with his selection of features. *Id.* at 7. Defendant asserts that Dr. Malek's analysis "mismatches the features he counts with the revenue to which his percentage is applied," and provides the apportionment figure to Mr. Malackowski "for application to the entire product revenue base." *Id.* at 8.

In response, Plaintiff asserts that Dr. Malek performed an admissible technical analysis because he based it on Defendant's materials and product bundles, including source code and each product's commercial structure. Docket No. 164 at 4–5. As one example, Plaintiff argues that "he gave full weight only to the ETA feature within the accused configuration and a 50% share to the other three primary functions, because those depend on the claim-enabled capability only when applied to encrypted traffic." *Id.* at 5. At bottom, Plaintiff asserts that Dr. Malek "follow[ed]

Cisco's own commercial organization, identif[ied] the implicated function, and reduce[d] further when it contain[ed] separate subfunctions," which is sufficient to survive *Daubert*. *Id.* at 7.

The Court agrees. First, Dr. Malek is permitted to develop apportionment factors and estimate technical attribution based on his expertise. As the Federal Circuit has explained, it has "never required absolute precision in [assigning value to a patented feature]; on the contrary, it is well-understood that this process may involve some degree of approximation and uncertainty." *Cf. Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014). Whether Dr. Malek's decision, for example, to give "full weight only to the ETA feature within the accused configuration and a 50% share to the three other primary functions" would have resulted in an exact apportionment fact is a proper subject for cross-examination. *See SimpleAir, Inc. v. Google Inc.*, No. 2:14-CV-11, 2015 WL 5895401, at *3 (E.D. Tex. 2015) ("Whether some other unit would provide a more perfect estimation of value goes to the weight of the evidence, not its admissibility.").

Moreover, Dr. Malek's analysis differs from that rejected in *Finjan*. *Cf. Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018) (opining that "[f]urther apportionment was required to reflect the value of the patented technology compared to the value of the unpatented elements" where plaintiff accused multi-component software engine of infringement). Here, Dr. Malek specifies that he based his "conservative" 50% figure from Cisco and Google reports and white papers that estimate encrypted traffic to between 40% and 90–95%. Docket No. 142-4 (Malek Rep.) at ¶ 268. Dr. Malek's analysis does not present such a failure to apportion such that it warrants exclusion under *Daubert*. Fundamentally, Defendant raises issues with Dr. Malek's inputs, rather than his methodology. Defendant may challenge Dr. Malek's 50% feature attribution figure and alleged failure to account for licensing tiers during cross-examination.

### B. Whether Dr. Malek Offers Opinions Outside Plaintiff's Infringement Contentions

#### 1. Dr. Malek's Doctrine of Equivalents Opinions

Defendant argues that the Court should exclude some of Dr. Malek's doctrine of equivalents theories because they are outside the scope of Plaintiff's infringement contentions. Docket No. 144 at 10–12. For example, Dr. Malek asserts that Plaintiff's "entire multi-product pipeline is equivalent to the single claimed server," even though Plaintiff did not assert that theory in its infringement contentions. *Id.* at 11. Defendant asserts that Plaintiff should have disclosed these theories as early as January of 2025, and Plaintiff provides no basis for its last-minute disclosure. *Id.* at 12. Thus, these allegedly undisclosed theories warrant exclusion. *Id.* at 11–12; Docket No. 180 at 3–4 (arguing that the generic language in the doctrine of equivalents analysis warrants exclusion). In response, Plaintiff asserts that its initial infringement contentions asserted infringement under the doctrine of equivalents, and that its supplemental infringement contentions incorporated Dr. Malek's report. Docket No. 164 at 11–14. Plaintiff argues that Dr. Malek's report merely supplies the technical rationale and evidence to support Plaintiff's infringement contentions. *Id.* at 12.

The Court declines to exclude Dr. Malek's doctrine of equivalents opinions because the record demonstrates that Defendant did not suffer significant prejudice. For example, in his rebuttal report, Dr. Wicker had the opportunity to address Dr. Malek's doctrine of equivalents opinions. *See, e.g.*, Docket No. 170-2 (Wicker Non-Infringement Rep.) at ¶ 678. Thus, at trial, Dr. Wicker will be able to testify as to Dr. Malek's doctrine of equivalents opinions, and Defendant will have the opportunity to cross-examine Dr. Malek on the same. The Court is therefore hesitant to exclude Dr. Malek's doctrine of equivalents opinions based on a perceived, and contested, late disclosure.

### 2. Dr. Malek's XDR Opinions

Defendant also argues that Dr. Malek proffers opinions based on "XDR," although "XDR" appears nowhere in Plaintiff's infringement contentions. Docket No. 144 at 13. While Dr. Malek asserts that XDR replaced Cisco's Cognitive Intelligence feature as part of the Accused Product "pipeline," Defendant asserts that this is both "untrue and fails to justify Plaintiff's non-disclosure and violation of the Local Patent Rules" and warrants exclusion of the XDR opinions. *Id.* Plaintiff argues that it incorporated XDR in the first amended complaint and initial disclosures, Docket No. 164 at 14–15, but Defendant claims that is insufficient to meet the requirements in the local patent rules. Docket No. 180 at 5. Plaintiff also asserts that whether XDR succeeded a particular discontinued service (here, "Cognitive Intelligence") is a merits dispute and is irrelevant to notice. Docket No. 164 at 15.

The Court declines to exclude Dr. Malek's XDR opinions for the same reason it declines to exclude his doctrine of equivalents opinions described above. Defendant has not suffered significant prejudice because Dr. Wicker had the opportunity to address these opinions in his rebuttal report. *See* Docket No. 170-2 (Wicker Non-Infringement Rep.) at ¶ 145. Further, both Dr. Wicker and Defendant will have an opportunity to challenge Dr. Malek's XDR-based opinions at trial.

*　　*　　*

For these reasons, Cisco's Motion to Exclude and Strike the Opinions of Dr. Sam Malek (Docket No. 144) is **DENIED**.

## IX. Cisco's Motion to Exclude the Testimony of Plaintiff's Expert James Malackowski and to Strike the Reply Expert Report of James Malackowski (Docket No. 143)

Defendant moves to strike portions of the opening report of Plaintiff's damages expert, James Malackowski, and moves to strike Mr. Malackowski's rebuttal report in its entirety. Docket

No. 143 at 1. Defendant raises six methodological flaws with Mr. Malackowski's report that allegedly warrant exclusion because Mr. Malackowski improperly: (1) includes every sale of Accused Products in his royalty base, even though Plaintiff asserts that they only infringe when used in the accused "pipeline" implementing encrypted traffic analytics (ETA); (2) includes, without basis, every worldwide sale of Accused Products; (3) "fails to distinguish between damages for direct and indirect infringement"; (4) applies Dr. Malek's "technological apportionment" factors; (5) "performs a profit-sharing analysis based on weighted average cost of capital (WACC)," which Defendant asserts has nothing to do with the Asserted Patents; and (6) relies on the *Centripetal* litigation, mainly the vacated district court decision. *Id.*; *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, No. 2:18-cv-94, 492 F. Supp. 3d 495 (E.D. Va. Oct. 5, 2020); *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 38 F.4th 1025 (Fed. Cir. 2022). Defendant also moves to strike Mr. Malackowski's reply report in its entirety. Docket No. 143 at 2.

**A. Royalty Base**

Defendant requests that the Court exclude Mr. Malackowski's royalty base opinions because they improperly include non-infringing product sales and disregard customers' actual use of the claimed inventions. *Id.* at 2–3. According to Defendant, because Plaintiff only accuses a very specific "pipeline" of Accused Products of infringing the Asserted Patents, Mr. Malackowski's failure to distinguish between "pipeline" sales and non-infringing sales warrants exclusion. *Id.* at 4. In response, Plaintiff argues that Mr. Malackowski's royalty base is admissible because he "begins with the accused Cisco product families," and the Federal Circuit recently "rejected a categorical rule that a reasonable-royalty methodology is unreliable merely because its economic base includes unaccused activity." Docket No. 165 at 1, 4 (citing *Exafer Ltd. v. Microsoft Corp.*, 169 F.4th 1089, 1093–94 (Fed. Cir. 2026)).

Mr. Malackowski's royalty base warrants exclusion. As Defendant points out, the Federal Circuit has held that an expert's damages estimate cannot rely on activities that do not constitute patent infringement. *Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*, 84 F.4th 979, 989 (Fed. Cir. 2023) (reversing district court's decision to deny exclusion where the plaintiff's damages expert "failed to account for [] irrelevant products and services."); *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 411 (Fed. Cir. 2018). Here, Plaintiff provides an expansive list of Accused Products, and Mr. Malackowski impermissibly considered all accused worldwide product revenues in developing his [redacted] royalty base. *See, e.g.*, Docket No. 143-2 (Malackowski Rep.) at 35. This error is especially problematic because Plaintiff only accuses a narrow "pipeline" of Cisco products of infringement—and Cisco has never made, used, or sold the accused "pipeline." *See supra* Discussion, § I.C.2 (determining that Plaintiff's only infringement argument to survive summary judgment is its induced infringement theory based on customer use). Mr. Malackowski's proposed royalty base is also troubling because both Plaintiff and Dr. Malek fail to identify any customer that uses the accused "pipeline." Docket No. 143-5 (Malek Dep.) at 19:2–11; 23:16–21 (Dr. Malek noting that he would "need more details" to opine on whether a customer created the accused pipeline). Thus, Mr. Malackowski's proposed royalty base is unreliable on its face.

The Court addresses Plaintiff's argument that Mr. Malackowski's running-royalty model "accommodates narrowing" and that "products ultimately found incapable of infringement 'would ultimately be deducted' because his analysis 'provides the opportunity to do so.' " Docket No. 165 at 4 (citing Docket No. 165-3 (Malackowski Dep.) at 50:11–17). When asked about how such a "deduction" would be performed, counsel for Plaintiff suggested that the jury would "distinguish

between the products." Docket No. 236 (September 23, 2026 Hr'g Tr.) at 173:15–17. The Court agrees with Defendant that such a proposal is "unworkable and impractical." *See id.* at 178:4–6.

Finally, Plaintiff's reliance on *Exafer* fails to save Mr. Malackowski's royalty base from exclusion. Plaintiff is correct that, in *Exafer*, the Federal Circuit "rejected a categorical rule that a reasonable-royalty methodology is unreliable merely because its economic base includes unaccused activity." Docket No. 165 at 4 (citing *Exafer Ltd. v. Microsoft Corp.*, 169 F.4th 1089, 1093–94 (Fed. Cir. 2026)). But *Exafer* requires a "causal connection" between accused and non-accused features to be considered. 169 F.4th at 1092–93. There, the court held that there was a "causal connection" that warranted reversal of the district court's decision to exclude plaintiff's expert's damages testimony where "the Accused Features in the [accused product] allowed [defendant] to reduce the central processing unit (CPU) usage in [accused] servers, freeing up CPU cores to host additional [virtual machines]." *Id.*

No "causal connection" exists here. Instead, Plaintiff merely offers conclusory assertions and attorney argument—neither of which is supported by either Dr. Malek or Mr. Malackowski's reports—that such a connection exists. *See, e.g.*, Docket No. 165 at 4 (noting, without more, that "Dr. Malek's technical apportionment and Mr. Malackowski's economic analysis supply [the causal] connection."). Such conclusory arguments are specifically the type of unreliable methodology that *Daubert* was designed to safeguard against.

For the reasons stated above, Mr. Malackowski is prohibited from offering any opinions or testimony regarding the appropriate royalty base or derived from his royalty base, including his damages conclusions, contained in Sections 3, 9.8, 10.3, 11.8, 11.11, 11.12, 11.13, 11.15, 12, and 14 of the Opening Expert Report of James E. Malackowski, dated June 29, 2026 (inclusive of all subsections and associated appendices). Excerpts of Mr. Malackowski's report are included in

Docket No. 143-2. Those challenged portions are **STRICKEN** from the Malackowski Opening Report. However, Mr. Malackowski is granted leave to amend his damages report consistent with this order. To be clear, Mr. Malackowski shall only be granted leave to amend the royalty base portion of his report. The Court does not grant Mr. Malackowski leave to amend his damages report to rectify the other portions that the Court has stricken. *See infra* § IX.B–C, E–F.

**B. Worldwide Sales**

Defendant also requests that the Court exclude Mr. Malackowski's worldwide sales opinions because, in relevant part, his opinions are not based on sufficient facts or data. Docket No. 143 at 6. Defendant further argues that while "Mr. Malackowski opines that foreign sales are proximately caused by Cisco 'to the extent' there is a U.S.-based cloud infrastructure," his sole support for his opinion is a 2019 deposition transcript from *Centripetal*. *Id.* at 7. In response, Plaintiff argues that Defendant's worldwide sales are sufficiently tied to domestic infringement, and therefore considering worldwide sales is appropriate. Docket No. 165 at 5. As one example, Plaintiff asserts that "domestic compilation of IOS-XE" permits obtaining damages on sales abroad because the "Stealthwatch source code was compiled in Atlanta." *Id.* at 7. Plaintiff also relies on documents and testimony allegedly demonstrating that "Stealtwatch Cloud was 'primarily hosted in AWS,' " which provides the requisite basis for considering worldwide sales as part of Mr. Malackowski's damages model. *Id.* at 8. In sum, Plaintiff argues that Mr. Malackowski's methodology for establishing "economic causation" is proper because it relies on Defendant's "interrogatory responses, produced records, witness testimony, and Dr. Malek's technical analysis." *Id.*

Plaintiff's arguments mirror those made in response to Defendant's motion for summary judgment on no foreign sales. *Compare* Docket No. 168 at 20 *with* Docket No. 165 at 5–11.

Because Mr. Malackowski's support for including foreign sales chiefly relies on the *Centripetal* litigation[4], Mr. Malackowski's foreign sales opinions warrant exclusion.

First, Mr. Malackowski's report reveals that his "domestic compilation" theory is solely derived from the *Centripetal* litigation. Docket No. 143-2 (Malackowski Rep.) at 39 nn. 208–12. The Court discusses in detail why any reliance on the *Centripetal* litigation is improper and will not repeat that analysis here. *See infra* § IX.F. Second, while Stealthwatch may be hosted on AWS servers in the United States, Mr. Malackowski fails to tie such "cloud hosting" to any infringing act. Third, Defendant has offered evidence that foreign sales were booked by the respective country's operating unit—there is no evidence to show that Defendant contracts, books, or invoices the foreign sales in the United States. *See, e.g.*, Docket No. 143-12. While Plaintiff asserts that the "predicates come from Cisco's interrogatory responses, produced records, and witness testimony," Docket No. 165 at 8, Mr. Malackowski overstates what those documents contain. For example, nothing in Defendant's supplemental interrogatory responses shows that "order acceptance and invoicing generally occurred through Cisco's U.S. operations." *Id.* at 8; Docket No. 143-7 at 51–55. The supplemental responses merely state that it "produced broader financial information that it could locate after a reasonable and diligent search." Docket No. 143-7 at 51–55.

Both parties also rely on *Brumfield, Trustee for Ascent Trust v. IBG LLC* in their briefing. 97 F.4th 854, 878 (Fed. Cir. 2024); Docket No. 165 at 5; Docket No. 183 at 2. In *Brumfield*, the Federal Circuit noted that courts have repeatedly "stressed … the needed causal relationship to the foreign conduct for which recovery is sought." 97 F.4th at 878. Here, Mr. Malackowski cannot

---

[4] The Court precludes Plaintiff and its experts from relying on any *Centripetal* documents, as discussed in Section IX.F, *infra*.

establish the requisite "causal relationship to the foreign conduct" because his opinions are based on unreliable evidence. Mr. Malackowski's opinions therefore warrant exclusion.

Accordingly, Defendant's motion to exclude Mr. Malackowski's worldwide sales opinions is **GRANTED**. Mr. Malackowski is prohibited from offering any opinions or testimony regarding a royalty base including "worldwide" sales or regarding recoverability of damages on foreign sales, including his damages conclusions, contained in Sections 3, 9.8, 10.3, 11.8, 11.11, 11.12, 11.13, 11.15, 12, and 14 of the Malackowski Opening Report (inclusive of all subsections and associated appendices appendices), and those challenged portions are **STRICKEN** from the Malackowski Opening Report. While the Court grants leave for Mr. Malackowski to supplement his report with respect to his proposed royalty base, the Court's leave does not apply to Mr. Malackowski's opinions on worldwide sales.

### C. Failure to Distinguish Between Direct and Indirect Infringement

Defendant argues that certain portions of Mr. Malackowski's Opening Report should be excluded for failing to distinguish between damages for direct and indirect infringement. Docket No. 143 at 8. Defendant asserts that this is "particularly problematic" because Mr. Malackowski accounted for pre-suit indirect infringement damages even though Plaintiff expressly disclaimed pre-suit indirect infringement. *Id.* In response, Plaintiff characterizes Defendant's arguments as raising a "liability and damages period issue," rather than a "methodological defect" suitable for *Daubert* practice. Docket No. 165 at 9. Plaintiff also points to Mr. Malackowski's alternative damages models that exclude pre-complaint sales, asserting that "[a]ny narrowing should conform the calculation to the alternative provided, not exclude the damages methodology." *Id.*

Mr. Malackowski's failure to distinguish between direct and indirect infringement warrants exclusion. As both parties agree, *Vocalife LLC v. Amazon.com., Inc.* is relevant here. No. 2:19-cv-123-JRG, 2020 WL 5815950 (E.D. Tex. Sep. 30, 2020). There, the court excluded plaintiff's

expert's pre-suit damages opinion because it granted partial summary judgment of no pre-suit induced infringement. *Id.* at *3. The Court reaches the same conclusion here. Because the Court grants summary judgment on no pre-suit indirect infringement (*see supra* Discussion, § I.C.1), Mr. Malackowski's pre-suit damages opinions are excluded.

Turning to post-suit indirect and direct infringement, the Federal Circuit has held that a party found liable for inducing infringement is liable for all damages associated with the direct infringement. *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988). Accordingly, Mr. Malackowski's failure to distinguish between post-suit indirect and direct infringement does not *per se* warrant exclusion. However, because the Court grants Mr. Malackowski leave to supplement his damages report, any decision the Court may make with respect to post-suit damages is premature.

Accordingly, for the reasons stated above, any pre-suit damages opinions contained in Sections 3, 9.8, 10.3, 11.8, 11.11, 11.12, 11.13, 11.15, 12, and 14 of the Malackowski Opening Report (inclusive of all subsections and associated appendices) are **STRICKEN**. Because the Court grants summary judgment on no pre-suit indirect infringement, Mr. Malackowski shall not be permitted to provide pre-suit indirect infringement opinions in any forthcoming supplemental report. With respect to Defendant's requested post-suit relief, the Court determines that it is **DENIED-AS-PREMATURE**.

### D. Technological Apportionment

Defendant asserts that Mr. Malackowski based his damages model entirely on Dr. Malek's report, did not perform any individual analysis, and disregarded different "licensing tiers" with respect to Defendant's products. Docket No. 143 at 8–10; Docket No. 183 at 3. According to Defendant, such "unquestioning reliance" warrants exclusion. Docket No. 183 at 3. In response, Plaintiff asserts that Mr. Malackowski used Dr. Malek's technical apportionment as an input for

his "separate economic analysis," an approach that courts in this district have approved. Docket No. 165 at 9–10.

While the parties dispute the merits of Mr. Malackowski's apportionment analysis, the Court determines that it does not present a failure to apportion so as to warrant exclusion. Both parties rely on *Realtime Data, LLC v. Oracle America, Inc*. for their respective arguments. Docket No. 143 at 9; Docket No. 165 at 10. There, the Court determined that while a technical expert's "opinions about the technical value of the accused products . . . may be an input into the damages expert's opinion about the proper apportionment value," a damages expert "cannot simply rely on the technical value" the technical expert "ascribes to the infringing features of the accused products." No. 6:16-cv-88-RWS-JDL, 2017 WL 11574028, at *5 (E.D. Tex. Mar. 30, 2017); *see also Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc*., No. 6:11-CV-492-RWS-KNM, 2017 WL 4769037, at *5 (E.D. Tex. Oct. 23, 2017) (approving apportionment analysis that used market data and another expert's technical analysis).

Here, Mr. Malackowski applied Dr. Malek's apportionment factors to the "appropriate gross profit metric," which "results in the technologically-apportioned incremental benefit of the Asserted Patents to the Accused Products." Docket No. 143-2 (Malackowski Rep.) at 54. Mr. Malackowski then apportions further based on Defendant's weighted average cost of capital ("WACC") and "Sales & Marketing and General & Administrative costs from Cisco's public income statements as a percent of its net sales." *Id.* at 54–55. While Mr. Malackowski's reliance on WACC warrants exclusion for the reasons stated in Section IX.E, *infra*, his methodology otherwise survives *Daubert* scrutiny—Defendant's challenges are better suited for cross-examination. However, Mr. Malackowski's apportionment relies on a flawed royalty base. The Court therefore cannot reach a final decision on the merits until it receives Mr. Malackowski's

supplemental report. Accordingly, this portion of Defendant's motion is **DENIED-AS-PREMATURE**.

**E. Weighted Average Cost of Capital (WACC)**

The remainder of the issues Defendant raises with respect to Mr. Malackowski's damages opinions are not dependent on Mr. Malackowski's forthcoming supplemental report and, therefore, the Court addresses them now.

As part of his damages analysis, Mr. Malackowski assumes that the parties would have agreed to split the remaining profits by comparing their respective WACC. Docket No. 143 at 10; Docket No. 143-2 (Malackowski Rep.) at 80–81. Defendant argues that the Court should exclude Mr. Malackowski's WACC-based opinions because WACC is a "company-wide metric that has no inherent connection to the claimed inventions' footprint in the marketplace," and Mr. Malackowski developed his opinions based on an unrelated company's WACC. Docket No. 143 at 10–11. In response, Plaintiff argues that Defendant overstates WACC's role because Mr. Malackowski only uses WACC as one *Georgia-Pacific* Factor 15 input for allocating incremental benefit after Dr. Malek already performed the technological apportionment. Docket No. 165 at 12; *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Plaintiff also argues that Mr. Malackowski's reliance on proxy companies was appropriate because he disclosed his rationale in his report. Docket No. 165 at 14. Plaintiff further notes that, should the Court have concerns about Mr. Malackowski's WACC inputs, the appropriate remedy is "targeted supplementation of the underlying data" rather than exclusion. *Id.*

Mr. Malackowski's WACC opinions warrant exclusion, and the Court declines to provide Mr. Malackowski the opportunity to supplement those opinions. First, Mr. Malackowski has failed to show that WACC is relevant or is sufficiently tied to the Asserted Patents' "footprint in the marketplace." *Id.* at 12. Defendant relies on two out-of-circuit cases—*Limelight Networks, Inc. v.*

*XO Communications, LLC*, No. 3:15-cv-720-JAG, 2018 WL 678245 (E.D. Va. Feb. 2, 2018), and *Omega Patents, LLC v. CalAmp Corp.*, No. 6:13-cv-1950-ORL, 2015 WL 12830496 (M.D. Fla. Dec. 23, 2015)—for the notion that courts have excluded similar WACC methodologies. Docket No. 143 at 11; Docket No. 183 at 4. In *Limelight Networks*, the court characterized the plaintiff's expert's WACC analysis as "fancy guesswork" because he "[did] not consider the actual stakes in the hypothetical negotiation or even the specific patents negotiated." 2018 WL 678245, at *3. In *Omega Patents*, the court similarly excluded the plaintiff's expert's WACC analysis because he "did not attempt to calculate the WACC for [plaintiff] using its own data" and it was "unclear to the Court, what, if any, economic similarities these companies share with [plaintiff]." 2015 WL 12830496, at *11–12.

Plaintiff argues that *Limelight Networks* is not relevant because plaintiff's damages expert in that case used WACC in a different way from Mr. Malackowski. Docket No. 165 at 13. Turning to *Omega Patents*, Plaintiff asserts that Mr. Malackowski supplied the "comparison universe, Bloomberg data, selected value, and rationale" that were missing in *Omega Patents*. *Id.* at 14. Neither of Plaintiff's arguments is persuasive. First, that the plaintiff's expert in *Limelight Networks* used WACC for a different purpose does not change the fact that the court rejected the WACC analysis where it did not meaningfully consider the stakes in the hypothetical negotiation or the Asserted Patents. *See* 2018 WL 678245, at *3. Second, Mr. Malackowski's purported rationale is not distinguishable from the rationale the *Omega Patents* court deemed insufficient. While Mr. Malackowski supplied companies he alleged were comparable to Plaintiff, he did not provide any other details in his report as to why those companies were comparable other than conclusory references to "a set of cybersecurity industry participants identified from third-party research reports, Cisco's list of acquired companies, and QPrivacy-produced documents in this

matter." Docket No. 143-2 (Malackowski Rep.) at 81. Thus, as the *Omega Patents* court held, "it is unclear to the Court, what, if any, economic similarities" the listed companies share with Plaintiff. 2015 WL 12830496, at *11. Such uncertainty warrants exclusion.

The Court also declines to provide Mr. Malackowski an opportunity to supplement the WACC inputs. Plaintiff relies on *Content Guard Holdings, Inc. v. Amazon.com, Inc*. for the notion that supplementation, rather than exclusion, is appropriate remedy. Docket No. 165 at 11; No. 2:13-CV-1112-JRG, 2015 WL 11089749, at *7 (E.D. Tex. Aug. 6, 2015). But in *Content Guard*, the court considered that the defendants' experts did not challenge the plaintiff's expert's conclusions or methodology. 2015 WL 11089749, at *7. Here, Defendant's damages expert, Mr. Martinez, served a rebuttal report that directly addressed Mr. Malackowski's WACC opinions. *See, e.g.*, Docket No. 143-6 (Martinez Rebuttal Rep.) at ¶¶ 327–29. Thus, Mr. Malackowski's opinions do not present a similar "close call" that the *Content Guard* court considered. Exclusion is appropriate.

For the reasons stated above, Mr. Malackowski is prohibited from offering any opinions or testimony regarding his profit-sharing methodology and opinions or derived from that methodology, including his damages conclusions, contained in Sections 3, 10.3, 11.15, 12, and 14 of the Malackowksi Opening Report (inclusive of all subsections and associated appendices), and those challenged portions are **STRICKEN** from the Malackowski Opening Report. Furthermore, the Court declines to grant Mr. Malackowski leave to supplement his profit-sharing opinions.

### F. Reliance on *Centripetal*

As was discussed above, Defendant requests that the Court exclude all reliance on or reference to the *Centripetal v. Cisco* litigation materials, Centripetal-Keysight Agreement, and all resulting damages opinions. Mr. Malackowski relies on the district court proceedings in *Centripetal Networks v. Cisco Systems, Inc.*, No. 2:18-cv-94, 492 F. Supp. 3d 495 (E.D. Va. Oct. 5, 2020) for opinions on *Georgia-Pacific* Factor 12, royalty structure, product overlap, and

worldwide sales. Docket No. 143 at 12; Docket No. 143-2 (Malackowski Rep.) at 39–40, 74–77. Defendant contends that Mr. Malackowski's reliance on *Centripetal* is improper because the Federal Circuit vacated the district court's decision and that case "concerned different patents, a confidential third-party agreement never produced in this case, and entirely different facts from this case." Docket No. 143 at 12–14. In response, Plaintiff asserts that Defendant overstates the impact of the *Centripetal* materials because Mr. Malackowski only uses *Centripetal* as "Factor 12 market context for Cisco networking and security products with substantial overlap to the Accused Products." Docket No. 165 at 14. Plaintiff also contends that, with respect to the Centripetal-Keysight agreement, Mr. Malackowski only relies on the "public description" and did not rely on "undisclosed agreement terms." *Id.* at 15.

Plaintiff's arguments are unpersuasive, and Mr. Malackowski's reliance on *Centripetal* warrants exclusion. During a hearing on Plaintiff's later-withdrawn motion to compel production of *Centripetal* litigation materials (Docket No. 79), the Court previously expressed doubt as to *Centripetal*'s relevance because that case involved a different plaintiff, different patents, different accused product combinations, and proceeded in a different court. *See* Docket No. 124 (June 23, 2026 Hr'g Tr.) at 83:4–9. There, Defendant argued that Plaintiff "grossly overstat[ed]" the technological overlap between *Centripetal* and this case and pointed out that the Federal Circuit vacated the original judgment. *Id.* at 84:24–85:17; *Centripetal Networks, Inc. v. Cisco Systems, Inc.*, 38 F.4th 1025 (Fed. Cir. 2022). Moreover, at the hearing on the present motion, Defendant argued that it would be "extremely prejudicial" to allow Mr. Malackowski to rely on *Centripetal* materials—here, the Cisco-Keysight agreement—where that agreement was not produced in this case and did not involve any party to this case. Docket No. 236 (September 23, 2026 Hr'g Tr.) at 154:25–156:15.

Again, as was noted above, the Court agrees. While Plaintiff argues Mr. Malackowski only used *Centripetal* as *Georgia-Pacific* Factor 12 market context for Defendant's products with "substantial overlap" to the Accused Products, only relied on the "public description" of the Centripetal-Keysight agreement, and only relies on *Centripetal* for "historical context" independent of his calculated royalty rate, Plaintiff understates the extent to which Mr. Malackowski relies on *Centripetal*. Docket No. 165 at 14; Docket No. 195 at 5.

The Fifth Circuit has opined that factual allegations in the trial court pleadings of a party in one case may be admissible in a different case as evidentiary admissions of that party, but courts have discretion to not admit such documents on relevancy or prejudice grounds. *Cont'l Ins. Co. of New York v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971); *Maggette v. BL Dev. Corp.*, No. 2:07CV181-M-A, 2011 WL 2134578, at *6 (N.D. Miss. May 27, 2011). With respect to depositions, Federal Rule of Civil Procedure 32(a)(8) permits the use of an earlier-taken deposition to be used in a "later action involving the same subject matter between the same parties." Regarding the other *Centripetal* documents that Mr. Malackowski relies on, trial courts have "wide discretion in determining whether evidence is relevant and admissible." *Perkins v. Volkswagen of Am., Inc.*, 596 F.2d 681, 682 (5th Cir. 1979).

Once again, the Court determines that any reliance on the *Centripetal* litigation is irrelevant and prejudicial to Defendant. First, any alleged "overlap" between the accused products in *Centripetal* and this case is irrelevant because *Centripetal* involved different patents, only one of which involved ETA, and also involved a different accused product combination. *See, e.g.*, Docket No. 89-1 at ¶ 2. Thus, Plaintiff and Mr. Malackowski do not satisfy the requirements of Rule 32(a)(8) under the plain reading of the rule. Second, any reliance on the Centripetal-Keysight is prejudicial to Defendant because Mr. Malackowski has not offered any analysis showing why that

agreement is relevant other than a single sentence stating that the license involved "network security-related patents and significant overlap in product families at issue." Docket No. 143-2 (Malackowski Rep.) at 77. Notwithstanding any perceived overlap in product families, Mr. Malackowski has not offered any rationale as to why the Centripetal-Keysight is relevant to the accused "pipeline," or why such an agreement involving different parties is relevant. Permitting the jury to hear testimony regarding a "$25 million-dollar lump-sum payment and a 10% royalty of directly competing products and a 5% royalty on non-competing products" from a now-vacated district court case has the potential to impermissibly skew the damages horizon.

Third, and not mentioned in Plaintiff's response, Mr. Malackowski relies on *Centripetal* documents as a basis for his worldwide sales theory and relies on the trial transcript for his basis that domestic compilation of the IOS-XE operating system caused foreign sales. Docket No. 143-2 (Malackowski Rep.) at 39–40, nn. 208–212; Docket No. 143-14 at 101. Mr. Malackowski fails to rely on other documents to support this theory, and Plaintiff was unable to provide additional evidence at the September 23, 2026 hearing. Docket No. 236 (September 23, 2026 Hr'g Tr.) at 65:21–75:12 (faulting Defendant for not providing documents that would provide where source code was compiled despite not moving to compel those documents). But reliance on documents from a different and overall irrelevant case, where Plaintiff failed to request documents in the present case, warrants exclusion.

For the reasons stated above, Plaintiff and Mr. Malackowski are prohibited from offering any opinions or testimony regarding the *Centripetal* litigation or relying on information from that case (including the Centripetal-Keysight agreement, and trial or deposition testimony), including, but not limited to, Mr. Malackowski's damages conclusions contained in Sections 3, 9.8, 11.12, 12, and 14 of the Malackowksi Opening Report (inclusive of all subsections and associated

appendices). Those challenged portions are therefore **STRICKEN** from the Malackowski Opening Report. Mr. Malackowski is further prohibited from relying on any *Centripetal* documents, the Centripetal-Keysight agreement, or any other information from that case, in preparing his forthcoming supplemental report.

### G. Mr. Malackowski's Reply Report

Defendant argues that the Court should strike Mr. Malackowski's reply report because Plaintiff did not seek leave or show good cause to provide a reply report. Docket No. 143 at 14. Because Defendant was deprived of an opportunity to respond, Defendant requests that the Court strike Mr. Malackowski's reply report. *Id.* at 14–15. In response, Plaintiff argues that Mr. Malackowski's reply report was justified because it narrowly addresses an EY Transfer Pricing study, which Plaintiff contends Defendant placed at issue via Mr. Martinez's rebuttal report. Docket No. 165 at 15. Plaintiff also asserts that any prejudice is minimal because Defendant allegedly acknowledged that the reply report had "no effect" on Mr. Martinez's ultimate damages opinion. *Id.*

The Court agrees with Plaintiff that any prejudice to Defendant is minimal. By its own admission, Plaintiff asserts that Mr. Malackowski's reply report "disclosed no new rate, damages figure, or methodology." Docket No. 195 at 5. Instead, Mr. Malackowski's reply report addresses Mr. Martinez's rebuttal report and the EY Transfer Pricing Study. *See, e.g.*, Docket No. 143-16 (Malackowski Reply Rep.) at 1–2. However, to the extent Defendant wishes to do so, the Court grants Defendant leave to respond to Mr. Malackowski's reply report. Defendant and Mr. Martinez shall serve his rebuttal report with his response to Mr. Malacowski's forthcoming supplemental report.

* * *

For these reasons, Cisco's Motion to Exclude the Testimony of Plaintiff's Expert James Malackowski and to Strike the Reply Expert Report of James Malackowski (Docket No. 143) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Mr. Malackowski shall have leave to amend or supplement his damages report consistent with this Order. Mr. Martinez shall have an opportunity to respond to Mr. Malackowski's supplemental report and reply report consistent with this Order.

## X. QPrivacy's Motion to Exclude Certain Damages Opinions and Testimony of Christopher A. Martinez (Docket No. 138)

Plaintiff's motion centers on [redacted] apportionment factor used by Defendant's damages expert, Mr. Christopher Martinez. Docket No. 138 at 1. Specifically, Plaintiff argues that Mr. Martinez's opinions should be excluded under *Daubert* because (1) Mr. Martinez's derived apportionment percentage is unreliable in that it "ignore[es] the vast majority of accused products"; and (2) Mr. Martinez impermissibly relied on documents that Defendant failed to disclose during discovery. *Id.* at 7–15.

### A. [redacted] Apportionment Opinions

Plaintiff asserts that Mr. Martinez's methodology is flawed because he did not, for example, perform a "valuation of the accused products or the relevant components" and fails to measure Stealthwatch usage. *Id.* at 3. Plaintiff also argues that Mr. Martinez improperly applies the [redacted] maximum potential use percentage to "every accused revenue-bearing product family," because he did not perform any product-specific analysis supporting that conclusion. *Id.* at 5. Thus, Mr. Martinez's analysis does not properly reflect the value of the accused features. *See, e.g.*, Docket No. 175 at 2. With respect to Stealthwatch specifically, Plaintiff criticizes Mr. Martinez's [redacted] apportionment because he allegedly does not explain how his inputs represent usage of the accused functionality. Docket No. 138 at 11. Plaintiff asserts that Mr. Martinez's method of considering

accounts without regard to each account's individual revenue renders his opinion unreliable. *Id*. at 11–12.

In response, Defendant clarifies that Mr. Martinez prepared his damages opinion by analyzing "five comparable patent licenses," which he places "in the context of a broader *Georgia-Pacific* factor analysis to reach the ultimate damages conclusion that [Defendant] would have paid a lump sum royalty in the range of [redacted] Docket No. 163 at 4 (internal citations omitted). As such, his affirmative damages opinion does not rely on the [redacted] apportionment; rather, the [redacted] apportionment applies to Mr. Martinez's rebuttal damages opinion. *Id.* at 4–5. Defendant also notes that Mr. Martinez's rebuttal opinions respond to Mr. Malackowski's income model, which attributed all encrypted web traffic to the value of the Asserted Patents. *Id.* at 5. To correct this, Mr. Martinez considered real-world usage data produced by Defendant, and that data was tied to the facts of the case. *Id.* at 5–6, 9. Even then, Mr. Martinez states that the [redacted] figure is overstated because it reflects potential use, not actual infringement. *Id*. at 6. Defendant further points out that Plaintiff's argument that the claimed inventions have different values within different Accused Products suggests that additional apportionment could be performed to reduce the [redacted] cap. *Id.* at 10; Docket No. 198 at 1–2, 4.

Mr. Martinez's opinions do not warrant exclusion under *Daubert*. Plaintiff only makes conclusory challenges to Mr. Martinez's rebuttal analysis and challenges Mr. Martinez's analysis on the merits, rather than his methodology. The Federal Circuit's decision in *Summit 6, LLC v. Samsung Electronics Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015), is instructive. There, plaintiff's damages expert considered customer usage data as part of his damages analysis. 802 F.3d at 1297. The panel opined that the damages expert's methodology, which considered "[defendant's] own

data regarding use" withstood *Daubert* scrutiny because it was "based on reliable principles and was sufficiently tied to the facts of the case." *Id.* at 1298.

The Court reaches the same conclusion here. For example, Mr. Martinez considered data demonstrating that "[redacted] customers had enabled ETA flows to CTA (a prerequisite of Plaintiff's infringement theory)." Docket 163 at 5. And of those [redacted] customers (representing [redacted] of Stealthwatch users), Defendant's data confirmed that only [redacted] of "CTA events" were infringing "ETA incidents." *Id.* Mr. Martinez therefore obtained the [redacted] apportionment percentage by multiplying the "subset of Stealthwatch users with ETA enabled [redacted] and the subset of 'ETA incidents' within CTA events [redacted]" *Id.* at 5–6. Considering the foregoing, the Court determines that Mr. Martinez's analysis is tied to the facts of the case and is based on Defendant's own customer usage data and therefore is permissible under *Daubert*. Plaintiff's challenges to Mr. Martinez's analysis generally go to the weight, not the admissibility, of Mr. Martinez's testimony. *See Summit 6, LLC*, 802 F.3d at 1298. Accordingly, Plaintiff's motion to exclude Mr. Martinez's [redacted] apportionment opinions is **DENIED.**

**B. Reliance on Documents Allegedly Not Disclosed During Discovery**

Plaintiff argues that Federal Rule of Civil Procedure 37(c)(1) provides an independent basis to preclude Mr. Martinez's [redacted] opinions. Docket No. 138 at 13. Specifically, Plaintiff argues that it sought information during discovery regarding the factual basis for any apportionment theory it planned to advance, but Defendant allegedly failed to identify the "principal document" that Mr. Martinez relies on for his [redacted] opinion—CISCO-QPRIVACY-00009917 (the "-9917 document")—in response to Plaintiff's interrogatories. *Id.*; Docket No. 175 at 4–5. Plaintiff asserts that the Federal Circuit struck expert opinions under similar circumstances in *MLC Intellectual Property LLC v. Micron Technologies, Inc.*, 10 F.4th 1358, 1370–71 (Fed. Cir. 2021). Docket No. 138 at 15.

In response, Defendant asserts that Plaintiff's request for exclusion pursuant to Rule 37 is misplaced because: (1) Defendant disclosed low customer usage of ETA no later than May 2025 and repeated this disclosure thereafter; and (2) Defendant produced the -9917 document in March 2026. Docket No. 163 at 12–13. Moreover, Defendant asserts that it provided the disputed document to Plaintiff's damages expert, Mr. Malackowski, for review, and that he chose not to perform any analysis of that document and Plaintiff also cancelled its deposition of Mr. Martinez. *Id.* at 13. Defendant avers that there is no claim of prejudice because Plaintiff never raised concerns during discovery and Defendant repeatedly disclosed its low-usage damages theory elsewhere, outside of its responses to Interrogatories 23 and 24. Docket No. 163 at 14. Defendant also points out that Plaintiff's reliance on *MLC* is misplaced because there, the responding party "never disclosed the factual underpinnings" of its position. *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1366 (Fed. Cir. 2021). *Id.* Here, Defendant produced a document and provided, at worst, a deficient interrogatory response that Plaintiff never moved to compel on. Docket No. 163 at 14.

The Court determines that Plaintiff fails to establish that it is entitled to relief under Rule 37 because Defendant timely disclosed documents, including the –9917 document, showing low ETA usage as early as March 2025, and repeated its disclosure thereafter. The present facts also differ from *MLC* based on Defendant's disclosure during discovery. *Cf. MLC Intell. Prop.*, 10 F.4th at 1366 (addressing plaintiff's failure to disclose the "factual underpinnings" of its damages theory). Here, the record demonstrates that Defendant produced documents in conjunction with its interrogatory responses. Moreover, Plaintiff had the opportunity to raise any discovery issues, serve additional interrogatories, or file a motion to compel, but it did not do so. Plaintiff also cancelled Mr. Martinez's deposition. The Court determines that Plaintiff's decision not to seek

additional discovery undermines its claims of prejudice now, at the eve of trial. Accordingly, the Court **DENIES** Plaintiff's requested relief.

* * *

For these reasons, QPrivacy's Motion to Exclude Certain Damages Opinions and Testimony of Christopher A. Martinez (Docket No. 138) is **DENIED**.

## XI. Cisco's Motion to Strike Portions of QPrivacy's Oppositions to Cisco's Motions for Summary Judgment of Non-Infringement (Docket No. 191)

Defendant moves to strike certain portions of Plaintiff's opposition briefs (Docket Nos. 168, 217) to Defendant's motion for summary judgment of non-infringement on non-technical grounds (Docket No. 142) on the basis that Plaintiff improperly: (1) "reasserts pre-suit indirect infringement and willfulness claims that it told the Court it was not asserting"; (2) raises a new infringement theory under 35 U.S.C. § 271(f) that it never previously disclosed; (3) "asserts a new theory that Encrypted Traffic Analytics ("ETA") is a 'component' within the meaning of § 271(c) and (f)(2)"; and (4) "asserts a new theory that the 'remote server' of the asserted claims is a single Cisco router or switch," even though that theory contradicts Dr. Malek's report. Docket No. 191 at 1. Defendant also seeks to strike Plaintiff's reliance on the now-vacated *Centripetal* litigation to support its § 271(f) theory. *Id*.

The Court granted Defendant's non-technical motion for summary judgment of non-infringement on the merits and has otherwise addressed Plaintiff's continued improper reliance on the *Centripetal* litigation elsewhere in this Order. *See supra* Discussion, §§ I, IX.F. The Court also addressed Dr. Malek's "remote server" opinions. *See supra* Discussion, § II.A. Therefore, Defendant's motion with respect to Plaintiff's pre-suit indirect infringement and willfulness theories, new infringement theories under 35 U.S.C. § 271(f), reliance on *Centripetal*, and Dr.

Malek's "remote server" theory are **DENIED-AS-MOOT**. The Court addresses Defendant's remaining §§ 271(c) and (f)(2) theories below.

Defendant argues that the Court should strike the portions of Plaintiff's opposition that rely on ETA as the relevant component for purposes of contributory infringement because Plaintiff never identified ETA as the relevant component prior to its response—it only "vaguely identified the relevant components." Docket No. 191 at 10. Defendant asserts that it was prejudiced because its motion for summary judgment relied on Plaintiff's statement that the "accused hardware and software, not ETA, was the 'component' for § 271(c) purposes." *Id.* In response, Plaintiff alleges that it identified the relevant components and lack of substantial non-infringing uses many times, including in the opposition brief, relevant interrogatory responses, and in Dr. Malek's report. Docket No. 219 at 10–11.

Plaintiff's eleventh-hour contributory infringement arguments warrant exclusion, and its own arguments in opposition to Defendant's motion to strike confirm this remedy. For example, Plaintiff argues that "[Defendant] ignores that [Plaintiff] *repeatedly* identified the relevant components of the infringing system as the Cisco network devices and software—including IOS-XE and Secure Network Analytics (formerly Stealthwatch)—that enable ETA functionality." Docket No. 219 at 10. That may be true, but nowhere in Plaintiff's brief does it point to anywhere in the record that it named ETA specifically as the "component" for its contributory infringement argument. Indeed, Plaintiff's opposition to Defendant's motion to strike and Plaintiff's opposition to Defendant's motion for summary judgment contradict one another. *Compare* Docket No. 219 at 10 (identifying relevant components of the infringing system that enable ETA functionality), *with* Docket No. 168 at 9–10 (limiting Plaintiff's contributory infringement argument to the ETA functionality only and arguing that "[Defendant] identifies no comparable use of ETA

functionality”). Thus, Plaintiff’s argument that Defendant “identifies no disclosure advancing an ETA-alone theory,” *see* Docket No. 238 at 4, directly contradicts Plaintiff’s response to Defendant’s motion for summary judgment.

The statements that allegedly identify the components (Docket No. 219 at 18) also do not support Plaintiff’s argument because those statements bolster Defendant’s argument that Plaintiff never disclosed an “ETA only” theory, despite Plaintiff’s reliance on such a theory in its opposition briefs. *See* Docket No. 168 at 10; Docket No. 217 at 3. Besides, it is well-settled that a plaintiff may not rely on new claims raised for the first time in response to a motion for summary judgment. *Cutrera v. Bd. of Supervisors of La. State Univ*., 429 F.3d 108, 113 (5th Cir. 2005) (“A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court.”).

Accordingly, Defendant’s motion to strike with respect to Plaintiff’s § 271(c) and (f)(2) arguments is **GRANTED**. Plaintiff’s arguments directed to the ETA functionality only as an accused component for purposes of proving infringement under 35 U.S.C. §§ 271(c) or (f)(2) in Docket No. 168 and Docket No. 217 are **STRICKEN**.

* * *

## CONCLUSION

For the reasons discussed above, the Court rules as follows:

- Cisco’s Motion for Summary Judgment of Non-Infringement on Non-Technical Grounds and No Damages for Foreign Sales (Docket No. 142) is **GRANTED-IN-PART** and **DENIED-IN-PART**;
- Cisco’s Motion for Summary Judgment of Non-Infringement on Technical Grounds (Docket No. 145) is **DENIED**;
- Cisco’s Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 101 (Docket No. 141) is **DENIED**;

- QPrivacy's Motion for Partial Summary Judgment of No Anticipation Under 35 U.S.C. § 102(a)(1) (Docket No. 139) is **DENIED**;

- QPrivacy's Motion for Partial Summary Judgment on Defendant's Prior Commercial Use Under 35 U.S.C. § 273, or Alternatively for Relief Under Rule 56(g) (Docket No. 140) is **DENIED**;

- QPrivacy's Motion to Exclude Certain Non-Infringement Opinions and Testimony of Dr. Stephen B. Wicker (Docket No. 136) is **DENIED**;

- QPrivacy's Motion to Exclude Certain Invalidity Opinions and Testimony of Dr. Stephen B. Wicker (Docket No. 137) is **DENIED**;

- Cisco's Motion to Exclude and Strike the Opinions of Dr. Sam Malek (Docket No. 144) is **DENIED**;

- Cisco's Motion to Exclude the Testimony of Plaintiff's Expert James Malackowski and to Strike the Reply Expert Report of James Malackowski (Docket No. 143) is **GRANTED-IN-PART** and **DENIED-IN-PART**;

- QPrivacy's Motion to Exclude Certain Damages Opinions and Testimony of Christopher A. Martinez (Docket No. 138) is **DENIED**; and

- Cisco's Motion to Strike Portions of QPrivacy's Oppositions to Cisco's Motions for Summary Judgment of Non-Infringement (Docket No. 191) is **GRANTED-IN-PART** and otherwise **DENIED-AS-MOOT** consistent with this Order.

It is further

**ORDERED** that Plaintiff shall serve an amended or supplemental damages report from Mr. Malackowski within **30 days** of this Order. Consistent with this Order, such amendments shall be limited to correcting Mr. Malackowski's proposed royalty base. *Supra* Discussion, § IX.A. It is further

**ORDERED** that Defendant shall have leave to conduct a targeted supplemental deposition of Mr. Malackowski, limited to addressing any changes or amendments to his report. Such deposition is to be completed promptly after the amended or supplemental report is served and is to last no longer than **three (3) hours**. It is further

**ORDERED** that, should the parties believe additional discovery is necessary, the parties may file a joint proposed discovery plan within **seven (7) days** of this Order. Such discovery shall be limited to any proposed amendments in Mr. Malackowski's report with respect to the forthcoming amended royalty base.

**ORDERED** that Defendant shall have leave to serve a rebuttal report from Mr. Martinez that addresses any amendments or supplements in Mr. Malackowski's report with **14 days** of receiving Mr. Malackowski's supplemental report. Consistent with this Order, Mr. Martinez may address Mr. Malackowski's Reply Report (Docket No. 143-16) in this supplemental rebuttal report. It is further

**ORDERED** that the pretrial conference in this matter, currently set for **October 14, 2026**, is **SUSPENDED** pending further order of the Court. It is further

**ORDERED** that the jury trial in this matter, currently set to begin on **October 19, 2026**, is **CONTINUED** pending further order of the Court. It is further

**ORDERED** that, within **seven (7) days** of this Order, the parties shall jointly move to file a redacted version of this Order. The parties' joint motion shall provide proposed redactions, describe the confidential information in those proposed redactions, and provide good cause for each redaction. Or, if no redactions are necessary, the parties shall jointly file an unsealed and unredacted version of the Order with a cover page stating no redactions are needed.

**So ORDERED and SIGNED this 7th day of October, 2026.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE